**N. W. ELECTRIC POWER COOPERATIVE, INC., a Missouri corporation, Respondent,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois Corporation, Appellant.**

**No. 25203.**

Kansas City Court of Appeals, Missouri.

Dec. 1, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1970.

Application to Transfer Denied April 13, 1970.

Roy F. Carter, Sprinkle, Carter, Larson & Hanna, Kansas City, for appellant.

David R. Clevenger, Platte City, Eugene E. Andereck, Pickett, Andereck & Hauck, Trenton, for respondent.

SHANGLER, Judge.

Plaintiff N. W. Electric Power Cooperative, Inc., a supplier of electrical power with operations in Missouri and Arkansas, was insured by defendant American Motorists Insurance Company against liability imposed upon it by law for damages because of injury to property "caused by accident". This action, the culmination of a dispute which has beset the parties for some time, represents the second appeal to this court by defendant from judgments, in each instance of $2,862.48, in favor of plaintiff. In those actions, plaintiff sought, and recovered, certain costs incurred when defendant refused to defend a suit brought against plaintiff by Donald C. Pharis and Helen E. Pharis, and then refused to satisfy the judgment which ensued. Although we recount only those salient facts necessary to a rational discussion of the issues presented, we must recede somewhat in time to do so. Our previous opinion is reported in Northwest Electric Power Co-operative, Inc. v. American Motorists Insurance Company, Mo.App., 346 S.W.2d 701.

In 1951, Donald C. Pharis and Helen E. Pharis, his wife, granted plaintiff an easement for the construction of a transmission line over their land. After it had been erected, they sued plaintiff Cooperative for damages, alleging in their petition that the line had been located in the middle of their tract rather than across a corner of it as plaintiff had represented it would do. The Pharises claimed damage had been done to their trees, crops and land and sought both actual and punitive damages. Defendant American Motorists initially refused to defend the Cooperative in that action, disclaiming that the damages were "caused by accident", but then agreed to defend under a reservation of rights. Plaintiff Cooperative became distrustful of the fitful interest manifested by the defendant insurer in the defense of the Pharis action, and so assumed its defense. In any event, it had learned through defendant insurer's attorney that defendant did not intend to satisfy any judgment which might be obtained by Mr. and Mrs. Pharis. Thereafter, the Pharis petition was amended to allege the grant of an easement 100 feet wide to the Cooperative and that in the construction of the transmission line, "defendant accidentally and negligently got off the right of way granted to defendant", causing damage to the Pharis land, trees, etc. The Cooperative, in its answer, admitted the execution of that easement and construction of the transmission line. Judgment was entered for Mr. and Mrs. Pharis for $1,750.00, and was satisfied by the Cooperative.

Thereupon, plaintiff sued and recovered a judgment against defendant for $2,862.48 as reimbursement for expenses attending the defense of the Pharis suit and for the satisfaction of that judgment. The appeal from that judgment was to this court. We reversed, because "(t)he (Pharis)

judgment upon which plaintiff relied does not decide the precise fact that determines coverage, i. e., whether or not the damage was caused by accident".

The case was retried to the court upon remand. Numerous exhibits used in the previous trial were received in evidence as well as the deposition of Mr. Pharis and the greater portion of the transcript of the prior trial. Additionally, the plaintiffs presented the testimony of Jim Galligher, plaintiff's field engineer, and that of Mr. Pharis himself. Evidence was adduced tending to establish the nature of the occurrence occasioning plaintiff's damages. Plaintiff once again had judgment for $2,862.48 and defendant once again appeals.

Defendant contends the judgment is fallible in two respects. Firstly, that there was no evidence that plaintiff's damages were caused by accident within the meaning of the insurance policy. Secondly, that there was a failure of proof as to the damages sustained by the Pharises.

The evidence bearing directly upon the manner in which the damage to the Pharis property was occasioned is limited to the testimony of Mr. Galligher, plaintiff's field engineer, and of Mr. Pharis himself. Mr. Galligher testified from several drawings which depicted a well-defined right-of-way over the Pharis property. Mr. Pharis testified that, as the right-of-way was located on "extremely rough ground", he permitted the Cooperative access to it by means of his private road. In constructing the transmission line, the Cooperative used many types of heavy equipment. In the course of their use, they went beyond the confines of both the private road and the 100 feet easement. The land was so extensively damaged thereby as to still be visible "twelve or fifteen years later". Trees standing outside the range of the easement were felled; his gates and fences were also damaged. This evidence established the Cooperative's negligence, as broadly pleaded, and a technical trespass, as well. It remains to be determined, howsoever designated, whether these acts of the Cooperative are comprehended within the policy term "accident".

The policy in question is one of "Comprehensive General Liability". The provision of our immediate concern reads:

"Coverage B-Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident*." (Emphasis added)

Defendant's first major contention is, in effect, that whatever damages the Pharises may have suffered, they were not "caused by accident" within the policy provisions. This argument contains three cognate components: (1) "Accidental means" and "accidental cause" are synonymous, and "caused by accident" is equivalent to both.[1] Therefore, it is to the cause (or means) of an act to which we must look, not the result, to determine if it was accidental.[2] (2) It follows, it is further argued, that even if the result be unexpected, if it attends the doing of an intentional act, it cannot be accidentally caused.[3] Neither may an effect which is the natural and probable consequence of a voluntary act be said to have been brought about by acci-

1. Caldwell v. Travelers Insurance Company, 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56 (accident insurance policy); Pope v. Business Men's Assurance Co., Mo.App., 131 S.W.2d 887 (accident insurance policy).

2. Murphy v. Western and Southern Life Insurance Co., Mo.App., 262 S.W.2d 340 (accident insurance policy); United States Mutual Accident Association v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (accident insurance policy).

3. Caldwell v. Travelers Insurance Co., supra; Aubuchon v. Metropolitan Life Insurance Co., (8 Cir.), 142 F.2d 20 (life insurance policy—double indemnity).

dental means.[4] (3) Defendant's ultimate deduction is that since the damage suffered by the Pharises was caused by a "voluntary intentional act" of plaintiff in moving off the permitted way and easement, "it was not caused by accident". The fortuity that such "voluntary intentional act" may have had unexpected and detrimental results for the Pharises makes no difference. These three conjunctive points are so subtly inter-related that a consideration of any one necessarily involves the consideration of the other two.

It will be noted that the Missouri authorities cited in support of these positions all involve policies of accident insurance or of life insurance with double indemnity provisions. The distinctions such cases make and the definitions they contain have generally not been applied in the construction of liability policies. Chemtec Midwest Serv. Inc. v. Insurance Company of North America, (D.C., W.D.Wis.), 288 F.Supp. 763, 768; Annotation, 166 A.L.R. 469. To hold otherwise would be to introduce factitious considerations of ends and means, distinctions "impossible of proper application", inevitably tending to absurd solutions. White v. Smith, Mo.App., 440 S.W.2d 497, 506; Mr. Justice Cardozo's dissent in Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 499, 54 S.Ct. 461, 463, 78 L.Ed. 934, 938.

To support its conjunctive argument that the Pharises' damages were not "caused by accident" because they were "the natural consequences" of the acts of the Cooperative's employees, and were thus readily foreseeable, defendant relies principally on Neale Const. Co., Inc. v. United States Fidelity & Guaranty Co. (10 Cir.), 199 F. 2d 591 (1952) and Hardware Mutual Cas. Co. v. Gerrits (Florida), 65 So.2d 69. In Neale, the court construed "accident" as used in a liability policy and as declared by the state courts of Kansas. It was there held that the breaking of certain wires as a result of defective spinning by a contractor was not an "accident" because "the natural and ordinary consequence(s) of a negligent act do not constitute an accident". In Hutchinson Water Co. v. United States Fidelity and Guaranty Co. (10 Cir.), 250 F.2d 892, 894 (1957), however, the same court poignantly acknowledged the virtual *reductio ad absurdum* which the holding in Neale had made of the role of liability insurance policies containing such a provision.

> "Apparently we did not contemplate whither this logic would lead us. For, if the policy did not cover the loss because the natural and probable consequences of the negligent act did not constitute an accident, then by the same logic, there would be no liability where the damage was the unexpected, hence unforeseen result of the negligent act. In the first instance, the damage would be foreseeable and therefore not accidental; in the latter instance, the damage would not be foreseeable and hence no liability upon the insured for his negligent acts. In either instance the insurer would be free of coverage and the policy would be rendered meaningless."

The rationale in the Gerrits case, also cited by defendant on this point, must be deemed to be repudiated by the holding in Hutchinson Water Co. v. United States Fidelity and Guaranty Co., supra. To ascribe to "accident" this meaning defendant contends for "would manifestly defeat the purpose of the policy, which is to protect against liability * * *". Minkov v. Reliance Insurance Co. of Phila., 54 N.J.Super. 509, 514–515, 149 A.2d 260, 263; Haynes v. American Casualty Co., 228 Md. 394, 179 A. 2d 900, 903; Aerial Agricultural Service of Montana, Inc. v. Till, (D.C., N.D.Miss.) 207 F.Supp. 50, 55.

In support of its third conjunctive argument that the Pharises' damages, although unexpected, were the result of the Co-

---

4. Callahan v. Connecticut General Life Ins. Co., 357 Mo. 187, 207 S.W.2d 279 (life insurance —double indemnity).

operative's intentional act and therefore not caused by accident, defendant cites Thomason, Contractor v. United States Fidelity and Guaranty Company (5 Cir.), 248 F.2d 417, 419. That case bears a resemblance to our own. A bulldozer operator erroneously failed to observe iron stakes which marked the property line, went beyond them, and damaged the adjoining property. The insurer was held not to be liable for the damages to the property as (at page 419) "the injury [was] the natural result of the (voluntary and intentional) act". Neither was there any insurance "against liability for damages caused by mistake or error". In a dissent, which has become as celebrated as the principal opinion, Judge Rives retreated significantly from the majority's position (pps. 420–421):

> "(T)he fact that an injury is caused by an intentional act does not preclude it from being caused by accident if in that act, 'something unforeseen, unusual and unexpected occurs which produces the result.'"

Yet, the distinction the dissent attempts is too recondite, and one difficult of practical application. It continues to require, as does the majority, that the means employed be accidental for injury to have been "caused by accident".

■ The sounder and more generally accepted view, however, is that "whether or not an injury is accidental (under such a liability policy provision) * * * is to be determined from the standpoint of the person injured". Cross v. Zurich General Accident & Liability Ins. Co., 184 F.2d 609, 611 (7 Cir.); Fox Wisconsin Corp. v. Century Indemnity Co., 219 Wis. 549, 263 N.W. 567. That is, it is the injury and not legal liability of the insured which must have been "caused by accident".

■ In Haynes v. American Casualty Co., supra, damage was caused when the insured contractor's employees, contrary to directions, encroached upon another's land and felled some trees. The court held that such damage was "caused by accident" within the meaning of the contractor's liability policy, despite the intentional nature of the contractor's employees' acts in cutting the trees. The insurer relied on the holding in the Thomason case and, additionally, made all those other arguments here presented. The court stated, 173 A.2d at p. 903:

> "In the instant case there was a technical trespass, of course, through the unwitting and heedless act of the insured's employees in going upon the land of another, contrary to the insured's instructions, and cutting the trees, but here, * * * it cannot be contended that injury to the property of another was intentional. To argue that, because the means employed were not accidental, the resulting damage cannot be construed as being 'caused by accident', though the damage was in no way reasonably anticipated, is to rely upon a fine distinction which would never occur to, or be understood by, the average policy holder."

The rationale of the Haynes case is sound and is particularly appropriate to the factual situation we were considering. The Cooperative's employees were on the Pharis land by virtue of the easement license and the permission to use the private road. Although the Pharises' recovery against the Cooperative was based upon a pleaded theory of negligence, plaintiff's employees were doubtless guilty of a technical trespass, as well. 87 C.J.S. Trespass § 5, pp. 959, 960.[5] There was no evidence, however, that the Cooperative either knew of the acts causing Pharises' damage or directed them to be done. Neither was there

5. Both the affinity and distinctions between trespass and negligence as forms of action are clearly explained in Mawson v. Vess Beverage Co., Mo.App., 173 S.W.2d 606. See also, 87 C.J.S. Trespass § 105, p. 1061; 1 C.J.S. Actions § 36, p. 1078.

any evidence that such acts of the employees were motivated by an intent or purpose to injure. Under the circumstances of this case, although it be said that the acts producing the results were intentional, where no intent to injure appears, the resulting harm was "caused by accident" within the policy meaning. Cross v. Zurich General Accident & Liability Ins. Co. (7 Cir.), 184 F.2d 609, 611; Rothman v. Metropolitan Casualty Insurance Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169 (involving wanton misconduct). See, Annotation, 2 A.L.R.3d 1238, Liability Insurance—Wilful Injury, and, particularly, Jernigan v. Allstate Insurance Co. (5 Cir.) 269 F.2d 353, 357, holding that death resulting from an assault was "caused by accident" within the provisions of an automobile liability policy. See, also, Annotation, 33 A.L.R.2d 1027, Liability Insurance—Assault—Accident.

In White v. Smith, Mo.App., 440 S.W.2d 497, the Springfield Court of Appeals had occasion to consider for the first time in this state whether unintended results of intended acts were "caused by accident" as that term was used in a liability policy. In the course of the operation of his slaughterhouse, the insured caused waste materials to be drained from its lagoon so that it overflowed into an adjoining property owner's well and contaminated it. The property owners had judgment on the theory of nuisance and garnished the operator's liability insurer. The policy was one of general liability insurance and contained a provision indemnifying against damages "caused by accident". The insurer contended the damages were not caused by accident, but were "the natural consequence(s)" of the insured's intentional acts. The court made this definitive answer (pages 507, 508):

> "It is true that, as a matter of public policy, a liability insurance contract does not afford coverage for damage intentionally inflicted by the insured, that is, for damage resulting from acts consciously and deliberately done by the

insured, 'knowing that they were wrong, and intending that harm result from said acts.' Crull v. Gleb, Mo.App., 382 S.W.2d 17, 21(3). But neither policy nor principle excludes from the category of damages 'caused by accident' for which coverage is afforded by a liability insurance policy, even damage which might be, for other purposes, regarded as *constructively* intentional or damage resulting from wanton and reckless conduct. No doubt instant defendant's *acts* were intended, but the trial court in the nuisance action found (and the record in the garnishment proceeding is to the same effect) that the *result*, i. e., the *damage* for which a monetary judgment was rendered, was not intended. 'There is a vast difference between an intended *act*, and an intended *result*.' Murray v. Landenberger, 5 Ohio App.2d 294, 215 N.E.2d 412, 415–416. (Citing other cases) In the oft-quoted language of Mr. Justice Cardozo in Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, 433, 19 A.L.R. 876, 878: 'Injuries [and damages] are accidental or the opposite, *for the purpose of indemnity,* according to the quality of the *results* rather than the quality of the *causes.*' That instant defendant's acts were *intended* did not exclude the *unintended* result from coverage under the policy in suit. To entertain a contrary view would work an exclusion from coverage of many, if not most, claims for damages arising out of the negligence of insureds and thus defeat the primary purpose for which liability insurance coverage is purchased. Moffat v. Metropolitan Cas. Ins. Co. of New York, D.C.Pa., 238 F.Supp. 165, 171; Messersmith v. American Fidelity Co., supra, 133 N.E. at 433."

■ The policy issued to plaintiff Cooperative by defendant American Motorists was one of General Comprehensive Liability. Although by riders of exclusion plaintiff Cooperative was not entitled to all such coverages, the printed portion of

the policy, under "Conditions", specifically insured, inter alia, against liability arising from the use of automobiles, products hazards, contractual warranties and assaults and batteries. The only definition of "accident" contained in the policy is found in paragraph 3, "Conditions * * * (d) Assault and Battery. Assault and battery shall be deemed an accident unless committed by or at the direction of the insured". Unless we are to conclude that the policy was intended to insure against assaults and batteries only—an absurd hypothesis—then as to all the other incidences of comprehensive coverage under the policy, "accident" remains undefined. "Accident" is a word of varied meaning and of no fixed legal signification. When standing alone and unqualified in a policy of indemnity insurance, it is ambiguous, and the meaning of the word most favorable to the insured should be accepted. Soukop v. Employers' Liability Assur. Corp., 341 Mo. 614, 108 S.W.2d 86, 91, 112 A.L.R. 149; Rose v. National Lead Co., Mo.App., 94 S.W.2d 1047, 1052. If we adopt that definition of "accident" for which defendant contends, it would exclude damage resulting from negligence and from the type of conduct which occasioned injury to the Pharises. This may not be allowed, as it would result in no coverage at all, and it would also be to say that plaintiff intended it so.

An insurance policy is an instrument of practical uses. Its very quiddity is the promise of indemnity it contains. If reasonably possible, it will be construed to furnish the designed protection, not to deny it. Giokaris v. Kinkaid, Mo., 331 S.W.2d 633, 639; 86 A.L.R.2d 925; Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 183; 154 A.L.R. 1088. The policy provisions should be resolved, as well, in the light of those reasonable expectations and purposes of the average businessman in making the contract. Appelman, Insurance Law and Practice, Vol. 13, 1969 Supp., p. 149. In his opening statement, counsel for plaintiff informed the court that the insurance in question was purchased as an incident to the installation of "about 1000 miles of (transmission) lines". (Defendant did not challenge this statement.) As these lines were to be constructed upon rights-of-way, plaintiff could reasonably expect that occasional damage might result in the manner it did, and that when that happened, the damages would be covered by its policy from defendant. While ordinarily, the mere designation of a policy as a "comprehensive general liability policy" does not have the effect of affording a measure of protection broader than the expressed provisions of the policy, it becomes proper to consider that designation in arriving at the intention of the parties. Couch 2d, Insurance, Vol. 10, p. 688. Considering the broad designation of the policy and that it was intended to cover all of plaintiff's operations in Missouri and Arkansas, it seems unlikely that an average purchaser would conclude that the policy was intended to have that narrow coverage contended for by defendant, in the absence of clear language to the contrary. Chemtec Midwest Services, Inc. v. Insurance Company of North America, supra, 288 F.Supp. p. 769. Defendant's contention that because Pharises' damages resulted from the intentional acts of the Cooperative they were not "caused by accident" is not supported by the policy provisions. It contains no such limitation, and none can be implied. Even wilful and intentional injuries caused by assault and battery are not excluded from coverage when caused by the Cooperative's employees and not instigated by the insured. There is no basis for the inference that injury from intentional acts, not done by the insured or at its direction, is necessarily excluded from its coverage.

The understanding of an ordinary man is the standard to be used in construing an insurance policy. Words used in them are to be given effect "in their plain, ordinary and popular sense". State ex rel. Prudential Ins. Co. of Amer-

ica v. Shain, 344 Mo. 623, 127 S.W.2d 675, 677; Rex Roofing Co., Inc. v. Lumber Mutual Casualty Co., 280 A.D. 665, 116 N.Y.S.2d 876, 877. To the average person, that which occurs unexpectedly is called an accident. Moore v. Fidelity and Casualty Company of New York, 140 Cal. App.2d Supp. 967, 295 P.2d 154, 157. See, also, definition of "accident", Webster's New International Dictionary (2d Edition, Unabridged). Also, as popularly understood, an event which is brought about intentionally, is not an accident. "In its more general sense the term ('accident') does not exclude human fault called negligence, but is recognized as an occurrence arising from the carelessness of men, and the fact that the negligence of the person injured contributed to produce the result will not make it any less an accident * * *". 1 C.J.S. Accident pp. 439, 440; 38 Am.Jur., Negligence, p. 647. When used without restriction in liability policies, "accident" has been held not to exclude injuries resulting from ordinary, or even gross, negligence. Appelman, Insurance Law and Practice, Vol. 7A, pps. 4–8. It does, however, exclude injuries resulting from the insured's wilful misconduct. 45 C.J.S. Insurance § 829, p. 887. Accordingly, we adopt as the definition of "injury to or destruction of property * * * caused by accident", as used in plaintiff's policy, to mean injury to or destruction of property not intentionally inflicted but caused by the negligence of the insured. Our definition is in accord with that declared by the Springfield Court of Appeals, White v. Smith, supra, 440 S.W.2d p. 508. See, also, Chemtec Midwest Serv. Inc. v. Insurance Co. of North America, supra, 288 F.Supp. p. 769. Cross v. Zurich General Acc. & Liab. Ins. Co., supra, 184 F.2d p. 611; Bundy Tubing Co. v. Royal Indem-

nity Co. (6 Cir.), 298 F.2d 151, 153; Corbetta Construction Co. v. Michigan Mutual Liability Company, 20 A.D.2d 375, 247 N.Y.S.2d 288, 292–293; Koehring Co. v. American Automobile Ins. Co. (7 Cir.), 353 F.2d 993, 996. Under similar definitions of "caused by accident" as provided in liability insurance policies, damages caused by the negligence of the insured have been held to be covered,[6] as well as those caused by a trespass committed by the insured's employees without his instigation,[7] damages for breach of warranty,[8] and for products hazards.[9] The evidence supports the conclusion that the insured operated negligently and in such other fashion as to result in an event which to the Pharises was unexpected and unforeseen. The damages for which they had received judgment were "caused by accident" within the meaning of the Cooperative's policy of comprehensive general liability insurance.

The second major point of alleged error defendant raises is that there was "a failure of proof as to the damages sustained by the Pharises". We reject this contention. The amount of damages suffered by the Pharises, or by the Cooperative for the matter, was never an issue in either of the two trials between these parties, or upon the appeals from the judgments rendered in them. Our mandate in Northwest Electric Power Cooperative, Inc. v. American Motorists Insurance Corporation, supra, 346 S.W.2d 1. c., p. 704, directed a re-trial to determine "whether or not the damage was caused by accident". *How* the damage was caused, *not how much* damage resulted, was the issue remaining. All others had been adjudicated on the former appeal and have become the law of the case. Adams v. Mason, Mo., 421 S.W.2d 276, 278.

6. E. g. Cross v. Zurich General Accident and Liability Insurance Co., supra, 184 F.2d p. 611; Annotation 7 A.L.R.3d 1262, 1265, Liability Insurance—"accident".

7. Haynes v. American Casualty Co., supra, 179 A.2d p. 903.

8. Bundy Tubing Co. v. Royal Indemnity Co., supra, 298 F.2d p. 153.

9. Guerdon Industries, Inc. v. Fidelity & Casualty Co. of New York, 371 Mich. 12, 123 N.W. 143.

The defendant, in effect, invites us to peer once again behind the Pharis judgment. This time, he asks us to assess whether the evidence in the Pharis trial supported the amount of $1750 given in judgment. We refuse to do this. Judgments, including judgments by agreement, are conclusive of matters adjudicated and are not subject to collateral attack except upon jurisdictional grounds. Under the rule of collateral estoppel and res judicata even though the judgment may have been erroneous, the issues may not be relitigated. Payne v. St. Louis Union Trust Co., Mo., 389 S.W.2d 832, at 836 and 50 C.J.S. Judgments p. 55.

The judgment is affirmed.

HOWARD, P. J., and HALL, Special Judge, concur.

CROSS, J., not participating.