INDEPENDENT PETROCHEMICAL
CORPORATION, et al.,
Plaintiffs,

v.

AETNA CASUALTY AND SURETY
COMPANY, et al., Defendants.

Civ. A. No. 83–3347.

United States District Court,
District of Columbia.

Jan. 10, 1994.

Jerold Oshinsky, Anderson, Kill, Olick & Oshinsky, Sherry Ward Gilbert, Howery & Simon, Washington, DC, for Ind. Petrochemical.

James Elmer Roclap, Miller, Cassidy, Larroca & Lewin, Washington, DC, for Aetna Cas.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

This matter comes before the Court on defendants' Joint Motion for Summary Judgment, filed November 13, 1992.[1] Upon con-

---

1. The defendants joining in on this motion are the Aetna Casualty and Surety Company ("Aetna"); American Employers' Insurance Company ("American Employers"); American Home As-

surance Company ("American Home"); American Re–Insurance Company ("America Re"); Continental Casualty Company ("Continental Cas"); Continental Insurance Company ("Conti-

sideration of defendants' motion, all responsive memoranda thereto and the entire record in this case, and after hearing argument in open court on October 22, 1993, the Court will for the reasons stated herein grant summary judgement in favor of defendants.

## I. BACKGROUND

In 1971, plaintiff IPC arranged for Russell Bliss, an independent contractor, to dispose of certain waste materials for its customer Northeastern Pharmaceutical and Chemical Company ("NEPACCO"). The waste materials contained dioxin, a family of chemical compounds that, in sufficient concentrations, may cause serious harm to humans, animals, and plants.[2] On five separate occasions between February and October of 1971, Bliss removed the hazardous waste in his tank trucks to a facility in Frontenac, Missouri, where he mixed it with waste oil and emptied the resulting mixture into storage tanks. Bliss later sprayed the mixture as a dust suppressant at a number of sites in Missouri.

As the toxic effects of the dioxin allegedly became apparent, a number of claims were brought against plaintiffs as well as Bliss.[3] At least fifty-seven civil actions involving more than 1,600 claimants were filed against plaintiffs, alleging bodily injury and property damage from exposure to contamination as a result of the spraying. In addition, class actions and suits by the State of Missouri and the United States were filed. The individual claimants sought in aggregate $4 billion in bodily injuries and property damage, as well as $4 billion in punitive damages. All of the private actions have been resolved with one exception, a case dismissed for failure to prosecute, which is currently on appeal. The actions by Missouri and the United States have both been settled, with the settlements currently awaiting court approval.

Between 1971, when IPC agreed to assist NEPACCO in disposing of the hazardous waste material, and 1983, when this case commenced, IPC was insured by sixty-seven primary and excess liability insurance policies purchased from the twenty-three insurers named as defendants in this action. In November 1983, plaintiffs filed suit seeking a declaratory judgment that these primary and excess insurers are obligated to defend and indemnify plaintiffs for all settlements and judgments, if any, in the dioxin-related claims arising out of the spraying of the hazardous waste material. In February of 1991, the Court granted summary judgement in favor of certain defendants in regard to those policies which designated New York law as controlling.

The Joint Motion for Summary Judgment requests the Court to enter summary judgement in regard to the policies controlled by Missouri law[4] by declaring that they do not

nental"); Employers Commercial Union Insurance Company ("ECU"); First State Insurance Company ("First State"); Harbor Insurance Company ("Harbor"); Hartford Accident and Indemnity Co. ("Hartford"); Insurance Company of North America ("INA"); The Insurance Company of the State of Pennsylvania ("ISOP"); North Star Reinsurance Company ("North Star"); Stonewall Insurance Company ("Stonewall"); The Travelers Indemnity Company ("Travelers"); Unigard Security Insurance Company ("Unigard"); and Certain London Market Defendants ("The London Defendants").

2. The name "dioxin" refers to the basic structure—two oxygen atoms joining a pair of benzene rings—of an entire family of chemical compounds.

3. There are twenty-nine sites which have been identified by the United States Environmental Protection Agency as locations which contain soil contaminated by Bliss' intentional spraying or release of dioxin-contaminated waste material. These sites (the "pollution sites") are know as: Times Beach; Shenandoah Stables; Timberline Stables; Bubbling Springs Stable; Saddle and Spur Club; Rosati/Piazza Road; Frontenac; Quail Run; Castlewood/Sontag Road; Highway 100/Erxleben; East North Street; Lacy Manor/Sandcut Road; Bliss Farm/Mid–America Arena; Bull Moose Tube Company; Hamill Transfer Company; Jones Truck Line; Overnight Transport/P.I.E.; Southern Cross Lumber; Arkansas Best Freight; Bonifield Brother Trucking; Community Christian Church; Manchester Methodist Church; Baxter Garden Center; Access Road to Old Highway 141; East Texas Freight; Bristol Steel; Hellwig Fruit Market; Minker/Stout/Romaine Creek; and Southwestern Bell.

4. The particular policies are summarized in Exhibit A to Defendants' "Statement of Material Facts Not in Genuine Dispute In Support of Joint Motion of Certain Defendants for Summary Judgement Under the Pollution Exclusion".

impose on the defendants any liability for bodily injury and property damage claims arising from alleged dioxin contamination at any of the pollution sites. Each of the policies contains a pollution exclusion in one of four forms. The first form (the "domestic insurers exclusion") reads as follows:

This insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental.

The policies issued by the London insurers and certain domestic insurers (the "London exclusion") contain or incorporate the following pollution exclusion, with minor variations not relevant to this motion:

This policy shall not apply to ...

Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

The policies issued by INA (the "INA exclusion") contain, in addition to the domestic insurers' exclusion, the following pollution exclusion:

This insurance does not apply to bodily injury, personal injury, or property damage arising out of pollution or contamination caused by the discharge or escape of oil or of any other pollutants or contaminants, unless such discharge or escape results from a sudden happening during the policy period, neither expected nor intended from the standpoint of the insured.

The policy issued by Travelers contains the following pollution exclusion:

It is agreed that this insurance does not apply

(a) to bodily injury or property damage arising out of emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant

(1) if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable ...

Plaintiffs do not dispute here that Bliss' sprayings constituted discharges within the meaning of all four insurance forms. What is at issue is whether the exceptions to the pollution exclusions apply to the facts of this case.

The parties agree that the exceptions to the domestic insurers' exclusion, the London exclusion and the INA exclusion should all be interpreted identically in deciding this question. However, the same cannot be said for the Travelers' exclusion, because it does not contain the word "sudden" or its equivalent. The parties, though, are in apparent agreement that its "expected or intended" language is identical in substance to use of the word "accidental" found in the domestic insurers' exclusion. As such, the Court's discussion in this memorandum of the term "accidental" shall unless otherwise indicated encompass all four forms, while the its discussion of the word "sudden" shall encompass all but the Travelers' exclusion.

## II. DISCUSSION

The central and most highly disputed question before the courts that have looked at the pollution exclusion clause has been whether the phrase "sudden and accidental" as found within the clause is ambiguous or unambiguous. Generally speaking, those courts that have viewed it to be ambiguous have found in favor of the insureds, while those that have seen it as unambiguous have found for the insurers.[5] To date, the highest

---

5. One notable exception is the recently decided case of *Morton International, Inc. v. General Ac-*

courts in the states of Colorado, Georgia, West Virginia and Wisconsin have found coverage after determining the pollution exclusion clause to be ambiguous.[6] The highest courts in the states of Florida, Massachusetts, Michigan, North Carolina and Ohio,[7] and a majority of federal courts of appeal, have found clause unambiguous and have accordingly ruled for the insurers.[8]

No Missouri court has addressed the pollution exclusion clause. However, in the case of *Aetna Casualty & Surety Co. v. General Dynamics Corp.*, 968 F.2d 707 (8th Cir.1992), the Eighth Circuit, interpreting Missouri law, found the phrase "sudden and accidental" to be unambiguous and synonymous with the words "abrupt" and "unexpected". *Id.* at 710. Defendants ask this Court to give deference the Eighth Circuit's opinion, and argue that there was nothing either abrupt or unexpected about Bliss' conduct. Plaintiffs argue that the Eighth Circuit was wrong both in finding the phrase "sudden and accidental" to be unambiguous and in giving "sudden" a temporal meaning. They also argue that, even if the Court follows the Eighth Circuit, it should still find coverage under the facts of this case.

## A. THE EIGHTH CIRCUIT'S OPINION IN GENERAL DYNAMICS

■ The Eighth Circuit in *General Dynamics* reversed the district court's finding that the term "sudden" was ambiguous. The district court ruled this way because the term was not defined within the insurance policies at issue, because "each party has placed distinct yet reasonable definitions on the term, and (because) recognized dictionaries differ as to the primary meaning of the term". *Aetna Cas. and Sur. Co. v. General Dynamics Corp.*, 783 F.Supp. 1199, 1209 (E.D.Mo.1991) (parenthesis added). The Eighth Circuit found this reasoning to be in error since it failed to consider the term "sudden" in context with the term "accidental". *Aetna*, 968 F.2d at 710. The appellate court stated that "Missouri law requires that all the terms of an insurance contract be given meaning" and that since the term "accidental" includes the unexpected, the term "suddenly" must mean abrupt in order to avoid rendering it superfluous. *Id.* By "assigning meaning to both 'sudden' and 'accidental'", any perceived ambiguity in the

*cident Insurance Company of America*, 134 N.J. 1, 629 A.2d 831 (1993), in which the Supreme Court of New Jersey found the nothing ambiguous in the word "sudden" but nevertheless ruled against the insurers on estoppel grounds. This opinion is discussed at greater length in this opinion, *infra*, at p. 582.

6. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083 (Colo.1991); *Claussen v. Aetna Casualty & Sur. Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989); *Joy Technologies, Inc. v. Liberty Mut. Ins. Co.*, 187 W.Va. 742, 421 S.E.2d 493 (1992); *Just v. Land Reclamation Ltd.*, 155 Wis.2d 737, 157 Wis.2d 507, 456 N.W.2d 570 (1990).

7. *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Corporation*, —— So.2d ——, 1993 WL 241520 (Fla.1993); *Lumbermens Mut. Casualty v. Belleville Indus., Inc.*, 407 Mass. 675, 555 N.E.2d 568 (1990); *Upjohn v. New Hampshire Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392 (1991); *Waste Management of the Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986); *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 597 N.E.2d 1096 (1992).

8. *E.g., Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153 (4th Cir.) (construing New Jersey law), *cert. denied*, —— U.S. ——, 113 S.Ct. 78, 121 L.Ed.2d 42 (1992); *Aetna Casualty & Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707 (8th Cir.1992) (construing Missouri law); *Hartford Accident & Indemnity Co. v. United States Fidelity & Guar. Co.*, 962 F.2d 1484 (10th Cir.) (construing Utah law), *cert. denied*, —— U.S. ——, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992); *Northern Ins. Co. v. Aardvark Assocs.*, 942 F.2d 189 (3rd Cir.1991) (construing Pennsylvania law); *A. Johnson & Co. v. Aetna Casualty & Sur. Co.*, 933 F.2d 66 (1st Cir.1991) (construing Maine law); *New York v. Amro Realty Corp.*, 936 F.2d 1420 (2d Cir.1991) (construing New York law); *FL Aerospace v. Aetna Casualty & Sur. Co.*, 897 F.2d 214 (6th Cir.) (construing Michigan law), *cert. denied*, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990); *United States Fidelity & Guar. Co. v. Murray Ohio Mfg. Co.*, 875 F.2d 868 (6th Cir. 1989) (construing Tennessee law by affirming without opinion 693 F.Supp. 617 (M.D.Tenn. 1988)); *United States Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988) (construing Kentucky law); *Great Lakes Container Corp. v. National Union Fire Ins. Co.*, 727 F.2d 30 (1st Cir.1984) (construing New Hampshire law). *Contra CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 962 F.2d 77 (1st Cir.1992) (also construing New Jersey law); *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162 (3d Cir.1991) (construing Delaware law).

term is eliminated. *Id.* The Court thus found the district court "should have declared that the clause relieves Aetna of liability for the events described therein". *Id.*

■ In deciding whether to follow the Eighth Circuit's interpretation of Missouri law here, this Court is not free to simply agree or disagree with the reasoning of the *General Dynamics* opinion. It must:

> defer to the local circuit's view of the law of a state in its jurisdiction when that circuit has made a reasoned inquiry into state law, unless we are convinced that the court has ignored *clear signals* emanating from the state courts. Only when we are certain that the pertinent circuit has *clearly misread* state law would it make sense to reject that circuit's view of state law.

*Abex Corp v. Maryland Cas. Co.*, 790 F.2d 119, 125–126 (D.C.Cir.1986) (emphasis added). The Court will thus analyze the challenges plaintiffs make to the *General Dynamics* decision from this vantage point.

### 1. Does Missouri Have an "Anti-Redundancy Rule"?

Plaintiffs first challenge the *General Dynamics* court's assertion that "Missouri law requires that all the terms of an insurance contract be given meaning",[9] arguing that Missouri recognizes that redundancies can occur in the language of insurance policies. The authority the Eighth Circuit relied upon is *Harnden v. Continental Ins. Co.*, 612 S.W.2d 392 (Mo.Ct.App.1981), in which the Missouri Court of Appeals considered the applicability of an exclusion found in a farmowner's insurance policy to the underlying facts of the case. The first part of the exclusion in question stated that:

> SECTION II OF THIS POLICY DOES NOT APPLY: ... (d) under Coverage G, to bodily injury to any farm employee, arising out of and in the course of his employment by the insured, ...

*Harnden*, 612 S.W.2d at 393. Both parties in *Harnden* agreed that if this segment of the exclusion applied there would be no coverage for the plaintiffs. The plaintiffs, though, argued that this segment was modified by later

segments of the exclusion which rendered it inapplicable to the case. In finding that the segment was not so modified, the court stated that plaintiff's interpretation "would allow the first segment to have no function whatsoever. Under the Missouri authorities previously cited, no *substantive clause* may be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course". *Id.* at 396 (emphasis added).

Defendants cite the case of *State Mut. Life Assur. Co. of Worcester, Mass. v. Dischinger*, 263 S.W.2d 394 (Mo.1953), as further support for the proposition that Missouri has an anti-redundancy rule. *Dischinger* addressed the issue of whether an entire paragraph in a policy for disability insurance should be disregarded. *Dischinger*, 263 S.W.2d at 401. In finding that it should not, the Supreme Court of Missouri stated the principle espoused in *Harnden* cited, *supra*, and noted that in order to avoid rendering a contract clause meaningless (including those found in contracts of insurance), "seeming contradictions must be harmonized away if that course is reasonably possible". *Id.* (quoting *Mathews v. Modern Woodmen*, 236 Mo. 326, 139 S.W. 151, 155 (1911)).

*Dischinger*, then, like *Harnden*, indicates that Missouri is clearly concerned with giving meaning to all provisions within a contract. Whether Missouri would extend this principle to single words within a single phrase is less clear. However, if "sudden" is stripped of any temporal meaning, the entire exception to the pollution exclusion would lose much of its significance. "Sudden", then, while a single word, is a critical one in this particular context. It is therefore entirely conceivable that Missouri would not want to reduce it to mere surplusage. As such, while the Eighth Circuit may have broadened the scope of the *Harnden* and *Dischinger* decisions, it has not done so unreasonably. Moreover, numerous courts at both the federal and state level have given the word "sudden" a quality of abruptness in order to avoid creating a redundancy in the policy

---

9. *Aetna*, 968 F.2d at 710.

language.[10] The Eighth Circuit thus has abundant support outside of Missouri for its position.

In arguing that Missouri would have no trouble reducing "sudden" to a redundancy, plaintiffs point to the case of *American Family Mutual Insurance v. Pacchetti,* 808 S.W.2d 369 (Mo. banc. 1991). In *Pacchetti,* the insured sought coverage under a homeowner's policy for a lawsuit filed against him by the parents of a boy who had died from ingesting cocaine while in the insured's home. The question before the court was whether the death was "expected or intended" by the insured within the meaning of the insurance policy. When discussing that phrase, the Court stated in *dicta:*

> It may be argued that by using two words, "intended" and "expected", different meanings were indicated. *We could note many examples of legal parlance in which studied redundancies are used,* but there are many suggestions of a shade of difference in the meaning of the two terms. Whether the insured expected or intended injury, however, is essentially a question of fact.

*Id.* at 371–371 (emphasis added).

This passage indicates that the Missouri courts may not necessarily insist upon giving independent meaning to each particular word within each particular phrase in a contract provision. However, if the words "expected" and "intended" are different, they are so in degree, not in kind. In contrast, the word "sudden" possesses an element of abruptness that is lacking in the term "accidental". It is thus quite possible that Missouri would on the one hand recognize words such as "expected or intended" to be examples of "studied redundancies" and on the other give both terms within the phrase "sudden and accidental" independent significance.

*Pacchetti,* then, does not suggest that the Eighth Circuit "ignored clear signals" emanating from the Missouri courts in finding an anti-redundancy requirement under Missouri law. *Abex,* 790 F.2d at 125. The Court must therefore respect the Eighth Circuit's opinion on this point.

### 2. The Definition of "Accidental" Under Missouri Law

Plaintiffs also challenge the Eighth Circuit's assertion that the only way to avoid redundancy in the phrase "sudden and accidental" is by giving the word "sudden" a temporal quality. They argue that under Missouri law, "sudden" can mean "unexpected" without any abruptness quality and that "accidental" can mean simply "unintended". They therefore assert that both terms can be given effect by construing them as being synonymous with "unexpected and unintended". Plaintiffs' argument must fail, though, because it is clear from the very cases they rely upon that Missouri recognizes the word "accidental" cannot be separated from the concept of unexpectedness.

The first case Plaintiffs cite is *N.W. Electric Power Cooperative, Inc. v. American Motorists Insurance Co.,* 451 S.W.2d 356 (Mo.Ct.App.1969). In *Electric Power,* the court addressed the question of whether the "injury" the insured, a power company, had inflicted upon a tract of land was "caused by accident" within the meaning of the insured's general liability insurance policy. *Id.* at 358. It was apparently undisputed that, although the acts giving rise to the injury were intentional, the injury itself was unexpected. *Id.* at 361–362. Although the Court acknowledged that the term "accident" could have "varied meaning", it rejected the insurer's argument that an unexpected injury cannot be "accidental" if the acts causing the injury were intentional. *Id.* at 363, 359–364. The court thus found in favor of the insured based upon the fact that the injury was

---

**10.** *E.g. Lumbermens Mut. Casualty v. Belleville Indus., Inc.,* 407 Mass. 675, 555 N.E.2d 568 (1990); *ACL Technologies, Inc. v. Northbrook Property & Casualty Insurance Co.,* 17 Cal.App. 4th 1773, 22 Cal.Rptr.2d 206 (1993); *Gridley Associates, LTD v. Transamerica Insurance Co.,* 828 P.2d 524 (Utah Ct.App.1992); *Harleysville Mutual Insurance Co. v. R.W. Harp and Sons, Inc.,* 305 S.C. 492, 409 S.E.2d 418 (1991) (interpreting North Carolina law); *Hartford Accident & Indemnity Co. v. United States Fidelity & Guar. Co.,* 962 F.2d 1484 (10th Cir.) (construing Utah law), *cert. denied,* — U.S. —, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992); *Northern Ins. Co. v. Aardvark Assocs.,* 942 F.2d 189 (3rd Cir.1991) (construing Pennsylvania law); *A. Johnson & Co. v. Aetna Casualty & Sur. Co.,* 933 F.2d 66 (1st Cir.1991) (construing Maine law).

unexpected. *Id.* at 364. In doing so, it noted that "the understanding of an ordinary man is the standard to be used in construing an insurance policy", and that "to the average person, that which occurs *unexpectedly* is called an accident". *Id.* at 364–365 (emphasis added).

Plaintiffs also cite *White v. Smith*, 440 S.W.2d 497 (Mo.Ct.App.1969) in which the court of appeals recognized the "chameleonic" quality of the term "accident". *White,* 440 S.W.2d at 511. Like the *Electric Power* court, though, the court in *White* rejected the idea that unexpected damage caused by intentional acts could not be "accidental". It stated that to entertain such a view "would work an exclusion of many, if not most, claims for damages arising out of the negligence of the insureds and thus defeat the primary purpose for which liability insurance coverage is purchased". *Id.* at 507–508.

Plaintiffs have thus offered no legal authority suggesting that the Missouri courts have ever divorced the concept of unexpectedness from the term "accidental". To the contrary, the *Electric Power* and *White* opinions indicate that Missouri considers the concept to be inextricably *linked* to the word. The Eighth Circuit in *Aetna* was thus correct in its belief that the word "sudden" in the phrase "sudden and accidental" would be rendered superfluous if it were defined as "unexpected".

### 3. The Drafting History of the Pollution Exclusion Clause

Plaintiffs argue that the Eighth Circuit was wrong in failing to consider the drafting history of the pollution exclusion clause when determining the meaning of the phrase "sudden and accidental". They assert that under certain circumstances such material is relevant under Missouri law even when the contractual language in question is clear and unambiguous.

The first such alleged circumstance is when the interpretation of an adhesion contract is in question, which plaintiffs argue is the case here. Plaintiffs cite a Missouri Court of Appeals case, *Estrin Const. Co., Inc. v. Aetna Cas. & Sur.,* 612 S.W.2d 413 (Mo.App.1981), as their sole support for this proposition. In *Estrin,* the court found that in adhesion contracts, the "printed words of a contract alone ... are not enough to disclose the expectations of the parties. The court must look for that purpose to the full circumstances of the transaction—whether the written words of contract be ambiguous or unambiguous". *Id.* at 419. It also stated that insurance policies were contracts of adhesion. *Id.* at 418. Plaintiffs argue that by failing to consider the drafting history of the pollution exclusion clause, the Eight Circuit ran afoul of these principles of Missouri contract law.

The case of *Robin v. Blue Cross Hospital Service, Inc.,* 637 S.W.2d 695 (Mo.1982) (*en banc* ), though, makes clear that the Supreme Court of Missouri does not view all insurance policies as adhesion contracts. The *Robin* court was unwilling to look beyond the four corners of a group hospital service plan plaintiff was enrolled in because it was unambiguous and because it was not a contract of adhesion. In regard to this latter point, it stated that "an adhesion contract is a form contract created by the *stronger* of the contracting parties". *Id.* at 697 (emphasis added). It then noted that the "terms of the contract are imposed upon the *weaker* party who has *no choice* but to conform. These terms *unexpectedly or unconscionably* limit the obligations and liability of the drafting party". *Id.* (emphasis added). The Court went on to find that even though the plaintiff was offered the health plan on a " 'take this or nothing' basis", the contract nevertheless lacked the "oppressive features of adhesion contracts". *Id.*

In a more recent *en banc* opinion, Missouri's highest court reaffirmed the principles of the parol evidence rule without mentioning *Estrin:*

In the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous written contract may not be varied, altered or contradicted by parol or extrinsic evidence, and all prior contemporaneous agreements are conclusively presumed to have merged into the written contract, *which itself becomes and is the single and final memorial of the understanding and intention of the parties.*

*Emerick v. Mutual Benefit Life Insurance Co.*, 756 S.W.2d 513, 523 (Mo.1988) (emphasis added); *see also Nolan v. American States Preferred Insurance Company*, 851 S.W.2d 720, 723 (Mo.Ct.App.1993) ("Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy"); *General American Life Insurance Company v. Barrett*, 847 S.W.2d 125, 130 (Mo.Ct.App.1993) ("if the policy is not ambiguous, the court cannot construe it but must express terms of the policy as it is written"); *West v. Jacobs*, 790 S.W.2d 475, 477 (Mo.Ct.App.1990) (noting that where language in an insurance policy is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy). It is thus clear that Missouri has implicitly if not explicitly rejected *Estrin.* The Eighth Circuit cannot be faulted for doing the same.

Plaintiffs also argue that the drafting history of the pollution exclusion clause shows that the insurance industry originally took the position that "sudden and accidental" meant "unexpected and unintended" as that phrase is used in the definition of the word "occurrence" found in the standard form comprehensive general liability ("CGL") insurance policies. They argue that for public policy reasons, Missouri would not allow the defendants to retreat from this position.

General Dynamics made the same estoppel argument in its brief to the Eighth Circuit. *See* Appendix C to Defendant's October 13, 1993 Response to Plaintiffs' Notice of Supplemental Authority. Although the Eight Circuit did not specifically address the argument in its opinion, it implicitly rejected it by finding in favor of the insurers. In arguing that the Eighth Circuit was wrong in doing so, plaintiffs do not turn to Missouri law but to a 1992 opinion from the West Virginia Court of Appeals, *Joy Technologies v. Liberty Mutual Insurance Company*, 187 W.Va. 742, 421 S.E.2d 493 (1992), and a recently decided case from the Supreme Court of New Jersey, *Morton International, Inc. v. General Accident Insurance Company of America*, 134 N.J. 1, 629 A.2d 831 (1993).

In both of these cases the courts construed the pollution exclusion clause against the insurance companies after finding that the insurance industry, when seeking state approval of the clause, had made statements to state insurance regulators indicating that the clause did not significantly limit pre-existing coverage. The court in *Joy Technologies* based its decision on West Virginia's "public policy" in insuring that foreign corporations "which seek to do business in West Virginia act in a manner consistent with their ... representations to the State". *Id.* 421 S.E.2d at 497. Similarly, the *Morton* court noted that New Jersey "has long recognized the doctrine that an insurer who misrepresents the coverage of, or the exclusions from, an insurance contract to the insured's detriment may be estopped from denying coverage on a risk not covered by the policy." *Id.* 134 N.J. at 74, 629 A.2d 831.

Plaintiffs have pointed to no Missouri authority which indicates that Missouri would agree with these sentiments. In fact, as this Court has already noted in its September 7, 1988 Memorandum Opinion, the courts in Missouri have consistently held that estoppel cannot be used to bring within the coverage of an insurance policy a loss or risk which is excluded by the terms of the policy. Memorandum, September 7, 1988, at 44; *Taylor–Morley–Simon, Inc. v. Michigan Mutual Ins. Co.*, 645 F.Supp. 596, 601 (E.D.Mo.1986), *aff'd*, 822 F.2d 1093 (8th Cir.1987); *Macalco, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883, 891 (Mo.Ct.App.1977); *State Farm Mutual Automobile Company v. Hartford Accident & Indemnity Company*, 646 S.W.2d 379 (Mo.Ct.App.1983); *Lawrence v. New York Life Insurance Co.*, 649 S.W.2d 461, 465 (Mo.Ct.App.1983); *Martinelli v. Security Insurance Co. of New Haven*, 490 S.W.2d 427, 434 (Mo.App.1972). Since there are no clear signals emanating from Missouri courts indicating that the Eighth Circuit has clearly misread state law, this Court should defer to that Circuit's view of the law of Missouri on this issue. *Abex*, 790 F.2d at 125–126.

Moreover, under Missouri law, in order for plaintiffs to prevail on their estoppel argument "the conduct or writing on which reliance is placed must be absolute and unequivocal, and must be certain to every extent ... If the admission is susceptible of two con-

structions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel". *Phipps v. Shelter Mutual Insurance Company,* 715 S.W.2d 930, 933 (Mo.Ct.App.1986). The record before this Court is devoid of any evidence indicating that Missouri insurance regulators were ever misled by the insurance industry at the time Missouri approved the pollution exclusion clause.[11]

It is clear that plaintiffs have provided the Court with no legal authority or argument which gives the Court reason to conclude that the *General Dynamics* opinion is not entitled to the deference it should be accorded under *Abex.* For that reason, the Court finds that the word "sudden" as found in the pollution exclusion clause must be interpreted as being synonymous with "abrupt".

### B. WHETHER BLISS' DISCHARGES WERE SUDDEN

■ Plaintiffs argue that even if the Court gives the word "sudden" a temporal quality, summary judgement should be denied because the defendants have failed to meet their burden of showing that none of Bliss' spraying activities constituted sudden happenings within the meaning of the pollution exclusion.[12] They assert that the discharges must be looked at individually and that each constituted a discrete, abrupt event warranting coverage. Defendants argue that Bliss' activities should be looked at as a whole and that when viewed from such a perspective it becomes clear that the discharges were not sudden. They argue alternatively that none of the spraying events were sudden even if looked at separately.

In support of their argument plaintiffs point to this Court's September 7, 1988 Memorandum Opinion, in which the Court indicated that determinations of whether a discharge is sudden must be made "on a claim by claim basis". Memorandum, September 7, 1988 at 185. While this is undoubtedly true, it is equally true that each discharge must nevertheless be viewed in context. Otherwise the pollution exclusion clause would be reduced to a toothless absurdity because *all* releases could be deemed "sudden". *Ray Industries, Inc. v. Liberty Mut. Ins. Co.,* 974 F.2d 754, 768 (6th Cir.1992). "One can always isolate a specific moment at which pollution enters the environment", but that doesn't mean it is either reasonable or logical to do so. *Id.*[13]

Once Bliss' acts are viewed from a proper perspective, it becomes clear that the sprayings were not isolated, discrete events because each was done within the regular

**11.** Although both sides have deluged the Court with contradictory and conflicting material on the drafting history of the clause, the only thing submitted *from Missouri* is an affidavit dated September 27, 1993 from Frank E. Oviatt, who served as an Assistant Supervisor for the Missouri Department of Business and Administration in 1971, one year *after* Missouri approved the pollution exclusion. This affidavit indicates that Mr. Oviatt was not involved in the acceptance process of the clause, but that he understood "sudden" to mean quick and knew the distinction between a sudden "accident" and an "occurrence".

**12.** Although plaintiffs repeatedly point to the passage from the Court's September 7, 1988 Memorandum Opinion in which the Court states that the defendants carry the burden of establishing that the relevant discharges were neither sudden nor accidental, the Court notes here that there is no clear authority from Missouri or elsewhere indicating where the burden should lie on this issue. *See e.g.* 4 G. Couch, *Couch on Insurance 2d (Rev ed)* § 79.385 at 338 (1983); *A. Johnson & Co., Inc. v. Aetna Cas. and Sur. Co.,* 933 F.2d 66,

75 n. 14 (1st Cir.1991); *Northern Ins. Co. v. Aardvark Associates,* 942 F.2d 189, 198 (3rd Cir. 1991). For the purposes of this memorandum opinion the Court will, as it did previously, assume that the burden of proof rests with the defendants.

**13.** *See also A. Johnson & Co., Inc. v. Aetna Cas. and Sur. Co.,* 933 F.2d 66, 75 (1st Cir.1991) (mere speculation "that any individual instance of disposal ... occurred 'suddenly' cannot contradict a reasonable reading of the allegations that the entire pattern of conduct was not a 'sudden and accidental' occurrence"); *Lumbermens Mut. v. Belleville Industries,* 938 F.2d 1423, 1430 (1st Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992) (it is "the nature of an insured's enterprise and its historical operations that determine the applicability of the policy provision"); *K.J. Quinn & Co., Inc. v. Continental Cas.,* 806 F.Supp. 1037, 1044 (D.N.H.1992) (citing *Liberty Mutual* in finding that events cannot be viewed as sudden "when they occur in the course of a third party's regular operations and are part of a routine that persists over a period of months or years").

course of Bliss' business over a period of at least two years. Accordingly, the Court finds that defendants have met their burden of showing that the discharges at issue in this case were not "sudden" within the meaning of the pollution exclusion clause.

## C. WHETHER BLISS' ACTIONS WERE ACCIDENTAL

■ Plaintiffs also claim that defendants have failed to meet their burden of showing that the sprayings were not "accidental". Preliminarily, the Court notes here that it does not have to reach this issue because, as discussed, *supra,* the Court has found that defendants have sufficiently demonstrated that the discharges were not "sudden". The exception to the pollution exclusion clause is applicable only to those pollution events that are both sudden *and* accidental. Since the events in question here were not sudden, the exception does not apply.[14] That being said, the Court nevertheless finds that Bliss' spraying activities were not "accidental" either.

Plaintiffs' argument here is twofold. First, they argue that defendants have not shown that Bliss was aware that the NEPACCO waste oil contained dioxin. While the discharge of the *oil* may have been intentional, they argue the discharge of the *pollutants* were not. Secondly, they assert that when IPC arranged for Bliss to dispose of NEPACCO's waste oil, it was unaware that Bliss would use a portion of this oil as a dust suppressant. These are arguments which the Court has already considered and rejected in regard to the insurance policies governed by New York law. In its December 6, 1991 Memorandum Opinion, which was affirmed by the Court of Appeals on June 3, 1993, the Court relied upon the cases of *Technicon Electronics Corp. v. American Home Assurance Co.,* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989) and *Powers Chemco, Inc. v. Federal Insurance Co.,* 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989) in finding that the alleged facts, that Bliss was not aware of the dioxin and that IPC did not take part in the actual

discharges, were irrelevant to its consideration of the pollution exclusion clause. In regard to plaintiffs' first argument this Court found that *Technicon* properly focused upon whether there had been a knowing discharge of toxic or hazardous waste, *not* whether there had been a discharge of a known toxic or hazardous wastes. Memorandum, December 6, 1991, at 15, *aff'd,* 995 F.2d 305 (D.C.Cir.1993). It also quoted from *Powers Chemco* in rejecting plaintiffs' second argument: " '[s]imply put, there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured ... [the exclusion clause] represents only a single discrete exception to the insurer's obligation to indemnify under the policy." *Id.* (quoting *Powers Chemco,* 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302).

Missouri has no decisions comparable to *Technicon* or *Powers Chemco.* However, the Court finds that Missouri would follow the reasoning of both cases in regard to the four pollution exclusion forms at issue here. All four exclusion forms specifically concern themselves with the intentional or unintentional nature of the *discharging act itself;* they do not ask whether the polluter was aware of the *contents* of the discharge. As *Technicon* and many other courts have noted, the question of whether the polluter intended the *damage* inflicted upon the environment is of no importance. *See New Castle v. Hartford Accident and Indemnity Co.,* 970 F.2d 1267, 1272 (3d Cir.1992) ("Knowledge of the nature of the substance discharged is irrelevant"); *Hartford Accident & Indemnity Company v. U.S. Fidelity and Guaranty Company,* 962 F.2d 1484, 1491 (10th Cir.1992) ("We found almost universal agreement among federal courts applying the pollution exclusion that it is the discharge that must be sudden and accidental to qualify for coverage, not the pollution damage"); *In re Texas Eastern Transmission Corporation PCB Contamination Insurance Coverage Litigation,* 1992 WL 227847, 50 (E.D.Pa. 1992) ("courts have been virtually unanimous

---

14. This is true with all of the exclusions at issue here with the exception of Travelers form which, as noted, *supra,* does not contain a "suddenness" requirement.

in concluding that the focus of the pollution exclusion inquiry is on the initial discharge of the pollutant into the environment", not on the resulting damage); *Protective National Insurance Company of Omaha v. City of Woodhaven*, 438 Mich. 154, 476 N.W.2d 374 (1991).

Moreover, as in *Powers Chemco*, there is nothing in the pollution exclusion forms at issue here to suggest that coverage may be found so long as the *insured* was not the party that intentionally discharged its waste materials into the environment, and the Court has neither the power nor inclination to inject such a limitation into the policies.[15] *Powers Chemco*, 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302; *Park–Ohio Industries, Inc. v. The Home Indemnity Company*, 975 F.2d 1215, 1223 (6th Cir. 1992) (agreeing with *Powers Chemco* in rejecting the view that the pollution exclusion applies only where the insured was an active and immediate participant in the pollution activity at issue); *K.J. Quinn & Co., Inc. v. Continental Casualty*, 806 F.Supp. 1037, 1044 (D.N.H.1992) (finding that the fact that the insured took no direct or active role in the polluting activity in question was "not relevant to the application of the pollution exclusion"); *Borg–Warner Corporation v. Insurance Company of North America*, 174 A.D.2d 24, 32, 577 N.Y.S.2d 953 (1992) (stating that it is of no significance that the insured had arranged to have its waste dumped into a landfill by an independent transporter). The Court thus finds that, because Bliss intended the discharging acts themselves, they could not have been "accidental".

### D. WHETHER THE UNDERLYING CLAIMS FOR NEGLIGENT SUPERVISION FALL WITHIN THE POLLUTION EXCLUSIONS

 Finally, plaintiffs argue that the pollution exclusion clause does not bar coverage for those underlying claims that arise out of Plaintiff's alleged negligent supervision of Bliss Oil, because such claims are a separate

alleged proximate cause of the underlying claimants' bodily injuries and property damage. In support of this claim, plaintiffs cite the case of *Braxton v. United States Fire Ins. Co.*, 651 S.W.2d 616 (Mo.App.1983). This Court, though, finds greater guidance from the case of *American States Insurance Co. v. Porterfield*, 844 S.W.2d 13 (Mo.App. 1992), which recognized that *Braxton* is inapplicable to the issue raised by plaintiffs because it addressed an insurance policy the Court found to be ambiguous. *Porterfield*, 844 S.W.2d at 15.

*Porterfield* indicates that when deciding coverage questions such as the one at bar, the Court should not focus upon the theories of liability in the underlying lawsuits but rather on the alleged facts themselves. *Id.* at 13. Plaintiffs do not dispute that it was Bliss' spraying activities which generated the underlying claims at issue here. Any claim for negligent supervision would be incidental to the claims arising out of the discharges themselves. *Id.* at 15. Coverage must thus be denied for these claims just as it must be denied for the others.

### III. CONCLUSION

The Court concludes that the pollution exclusion clauses at issue in defendants' joint motion for summary judgement impose no duties or obligations upon the defendants to defend or indemnify plaintiffs with regard to personal injury or property damage claims against plaintiffs allegedly arising out of dioxin contamination at any of the pollution sites listed, *supra*, at footnote 3 of this Memorandum Opinion. It is therefore by the Court this 10th day of January, 1994.

ORDERED that defendants shall submit to the Court a proposed judgement in accordance with the findings in this memorandum by no later than January 20, 1994; and it is further

ORDERED that a status conference be held, for the purpose of determining what if any issues remain for the Court to decide in

---

**15.** The possible exception to this is the INA exclusion, which covers "sudden happenings" which are "neither expected nor intended from the standpoint of the insured". Since it is clear that none of the discharges in question were "sudden", the Court need not decide here whether they were expected or intended within the meaning of this exclusion.

this case, on January 27, 1994 at 9:30 a.m. in Courtroom no. 5, United States District Court for the District of Columbia.