John OLSEN, Respondent,

v.

Javed Q. SIDDIQI and Global BizDimensions, LLC, Respondents,

and

American Family Mutual Insurance Company, Appellant.

No. ED 97455.

Missouri Court of Appeals, Eastern District, Division Two.

May 9, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 2012.

Application for Transfer Denied Aug. 14, 2012.

---

Mary Anne Lindsey, Robert J. Wulff, Evans & Dixon, LLC, St. Louis, MO, for appellant.

Max G. Margulis, Chesterfield, MO, for respondent John Olsen.

KENNETH M. ROMINES, J.

This case concerns coverage under a general commercial liability insurance policy for violations of the Telephone Consumer Protection Act (TCPA).

1. The suit was originally filed against Javed Siddiqi. Global was added as a defendant in the second amended petition, and Siddiqi was

### Background and Procedural History

In January 2008, John Olsen filed a class action suit against Global BizDimensions, LLC (Global) alleging violations of the Telephone Consumer Protection Act (TCPA).[1] Specifically, Olsen alleged that Global sent unsolicited faxed advertisements to Olsen and other members of the class. Global had a general commercial liability insurance policy with American Family Mutual Insurance Company (American Family). Global tendered defense of the suit to American Family, which refused, claiming there was no coverage under Global's policy for this type of suit. Global settled the underlying suit for $4,917,500.00 with the parties agreeing that the judgment would be recovered from the proceeds of Global's insurance policy only.

Olsen then brought a garnishment action against American Family, seeking to recover the settlement judgment award. Olsen served a writ of garnishment with accompanying interrogatories on American Family on 15 July 2009. American Family served its responses on 21 August 2009, denying that it held any money belonging to Global. Olsen filed his exceptions to those responses on 10 September 2009. On 18 September 2009, American Family filed its responses to Olsen's exceptions, contending that Olsen failed to file his exceptions in a timely manner and thus, American Family's responses were conclusive against Olsen. American Family then filed a motion for summary judgment asserting its responses and various other defenses. On 8 December 2009, Olsen filed a motion to dismiss the first garnishment without prejudice—which was granted-and contemporaneously filed a second garnishment action. After timely respons-

dismissed with prejudice in the Final Approval of Settlement Agreement and Judgment.

es, exceptions and cross-motions for summary judgment, the trial court entered judgment denying American Family's motion for summary judgment and granting Olsen's. Judgment was rendered in favor of Olsen in the amount of $4,917,000.00 plus post-judgment interest.

### Standard of Review

"The standard of review of appeals from summary judgment is essentially de novo. This Court will review the record in the light most favorable to the party against whom judgment was entered." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 577 (Mo. banc 2011) (internal citation omitted).

### Discussion

American Family cites a number of errors by the trial court on appeal. However, as we find the issue of "property damage" dispositive of the case, we will address it first and only.

■ American Family argues that the trial court erred in finding coverage for the TCPA violations as determined in the settlement judgment under the terms of Global's general commercial liability policy. American Family claims the award granted in the settlement judgment does not constitute "property damage" as defined in the policy. This appears to be an issue of first impression in this state.

The TCPA provides a private person or entity bringing suit under the act three possible remedies: 1) an injunction; 2) damages for actual monetary loss *or* statutory damages in the amount of $500.00 per violation; 3) both 1) and 2). 47 U.S.C. Section 227(b)(3) (emphasis added). In this case, Olsen and the class members elected to pursue the statutory damages of $500.00 for each unsolicited fax.[2]

Global's policy provides that American Family "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies."[3] The question this Court must address is whether the statutory damages awarded in the underlying suit constitute "property damage" under the terms of Global's policy and the laws of this State.

Olsen relies on *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876 (8th Cir.2005), for the proposition that they do. In that case, the Eighth Circuit, applying Missouri law, held that statutory damages under the TCPA constituted "damages" under the terms of the insured's policy. *Id.* at 880. Respondent's reliance on this case is misplaced, as the terms of the policy at issue in *Universal* were materially different from the terms of the policy involved in this case. The policy in *Universal* provided that the insurer would "pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law).... 'DAMAGES' means amounts awardable by a court of law.... DAMAGES does not mean civil penalties, fines or assessments." *Id.* at 878 n. 2. The Court found that because the purpose of statutory damages available under the TCPA is to have a deterrent or punitive effect, and that the policy's definition of DAMAGES included punitive damages, the statutory damages awarded in the

---

**2.** American Family concedes that had Olsen elected to pursue actual damages, i.e. the monetary loss for the paper, ink and loss of use of the fax machine while the offending fax was being received, such an award would be covered by the policy.

**3.** Both parties concede that the award does not constitute "bodily injury." The issue of "personal and advertising injury" will be discussed *infra*.

judgment were covered by the policy. *Id.* at 881. Global's policy does not have a similar provision for punitive damages. As such, the *Universal* Court's analysis was based on a different definition of the term "damage," and its holdings are inapplicable to this case.

▮ The terms of Global's policy dictate a different result. The policy defines "property damage" as:

a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Under Missouri law, unless otherwise bargained for, the term "damages" does not include fines and penalties. *Farmland Industries, Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 510–11 (Mo. banc 1997). As such, if the statutory damages awarded in the underlying judgment here are in the nature of fines or penalties, they are not covered by Global's policy. Again, this precise question has not yet been addressed by a Court of this state.

▮ A "penalty" is a forfeiture inflicted by penal statute. *State ex rel. McNamee v. Stobie,* 194 Mo. 14, 92 S.W. 191, 212 (Mo. banc 1906). Missouri law distinguishes between remedial and penal statutes. *Collier v. Roth,* 468 S.W.2d 57, 60 (Mo.App.1971). A penal statute is a law "which inflicts a forfeiture of money or goods by way of penalty for breach of its provisions." *McNamee,* 194 Mo. 14, 92 S.W. 191 at 212. "[T]he broad definition of 'penal statutes' encompasses laws that permit recovery of a *penalty* by an individual as well as by public prosecution." *Collier,* 468 S.W.2d at 60 (emphasis added). Laws which allow individuals to recover statutory damages have been declared to be penal. *Id.* It follows that those statutory damages are in the nature of penalties. "Where a statute is remedial in one part and penal in another, it should be considered as penal when enforcement of the penalty is sought." *Id.* "Where the sum given by the statute is called damages by it, the fact will not prevent its being a penalty to be recovered by a penal action, if such is its real nature." *McNamee,* 194 Mo. 14, 92 S.W. 191 at 212–13.

▮ We conclude that the TCPA is both remedial—when an individual seeks recovery for actual monetary loss—and penal—when an individual seeks the statutory damages of $500.00 for each violation. As Olsen opted to recover statutory damages, those damages were penal in nature, and as penalties, did not constitute "damages" under the terms of the policy. The trial court erred in determining otherwise.[4]

▮ Olsen argues that even if the award in the underlying case does not constitute "property damage," there is still coverage under the policy's "personal and advertising injury" provisions. However, contrary to the trial court's judgment, there was no coverage for "personal and advertising in-

---

4. There was some discussion during oral arguments that coverage might exist simply because the damages were pursuant to a court award as "sums the insured was legally obligated to pay." In *Farmland* our Supreme Court recognized this language does not obligate an insurer to pay any time its insured has a money damage award entered it against, but only in those instances when the award is for "direct and consequential losses because of *property damage* for which an insured can be held liable." *Farmland Industries, Inc. v. Republic Ins. Co.,* 941 S.W.2d at 510.

jury" under the plain and unambiguous terms of Global's policy.

An endorsement to the policy reads: "The following is added to Section II—Liability and *supersedes any provision* to the contrary: The insurance provided under Paragraph A. Coverage does not apply to 'personal and advertising injury.'" (Emphasis added). Olsen argues that this exclusion conflicts with other provisions of the policy that reference "personal and advertising injury coverage," including the Tenants Liability endorsement which purports to modify the policy limits of coverage for "personal and advertising injury." Olsen claims that such a conflict creates an ambiguity that should be resolved in favor of coverage.

Olsen is correct that any ambiguities in insurance contracts should be resolved in the favor of coverage. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). "However, the [mere] fact that the parties disagree as to the meaning of the policy does not give rise to an ambiguity." *Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.*, 236 S.W.3d 651, 655 (Mo.App. E.D.2007). "An ambiguity exists [only] when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Id.* (quoting *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992)).

The language in the endorsement negating coverage for personal and advertising injury is plain and unambiguous. By its clear terms, the exclusion supersedes any provision to the contrary. The record reflects that this is the coverage Global bargained for in order to reduce its premiums, this is the coverage Global paid for, and this is the coverage that Global received. It cannot now, through the persona of Olsen, go back and argue ambiguity to its advantage. There is simply no coverage for personal and advertising injury under Global's policy, and Olsen's reliance on such is unavailing.

### Conclusion

The statutory damages awarded to Olsen and the class members in the underlying suit do not constitute "property damage" under the terms of Global's general commercial liability policy and the laws of this State. As such, Global's policy provides no coverage for the damages awarded in the settlement agreement, and the trial court erred in determining otherwise. The case is remanded to the trial court with an order to enter summary judgment in favor of American Family.

It should be noted that our failure to address the issue of Olsen's late exceptions to American Family's interrogatory answers is in no way an endorsement of the trial court's actions. Instead, we simply decide this case on a different issue.

KATHIANNE KNAUP CRANE, P.J., concurs.

LAWRENCE E. MOONEY, J., dissents.

LAWRENCE E. MOONEY, Judge.

I respectfully dissent.

When you receive an unsolicited fax, you lose paper. You lose toner. You lose the use of your fax machine. *See, e.g., Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244–45 (10th Cir.2006)(noting losses incurred from unsolicited faxes); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 654–55 (8th Cir.2003)(discussing TCPA legislative history identifying the range of harms created by junk faxes). These losses fit squarely within American Family's policy definition of "property damage."

The United States Congress enacted the TCPA to protect facsimile machine owners from unsolicited advertisements. *Terra Nova Ins. Co. v. Fray–Witzer*, 449 Mass. 406, 869 N.E.2d 565, 575 (2007). The legislative history of the TCPA identifies numerous problems associated with unsolicited facsimile advertising, including shifting costs to the recipient and the interference with the recipient's equipment:

> [W]hen an advertiser sends marketing material to a potential customer through regular mail, the recipient pays nothing to receive the letter. In the case of fax advertisements, however, the recipient assumes both the cost associated with the use of the facsimile machine and the cost of the expensive paper used to print out facsimile messages. It is important to note that these costs are borne by the recipient of the fax advertisement regardless of their interest in the product or service being advertised.
>
> In addition to the costs associated with fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications.

H.R.Rep. No. 102–317 (1991), p. 25; *see also, Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744, 750 (M.D.N.C.2002)(discussing legislative history); *Am. Blast Fax*, 323 F.3d at 655 (noting unsolicited fax advertisements shift significant costs to the fax recipients per year, interfere with company switchboard operations, and burden recipients' computer networks).

The monetary impact of a single unsolicited fax may seem minor to some, but "it is nevertheless a cost borne by the recipient and recognized by Congress as a compensable harm." *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 880 (8th Cir.2005). To that end, the TCPA allows recovery for actual monetary loss, or statutory damages of $500, whichever is greater, for each violation. 47 U.S.C. § 227(b)(3); *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 581 (Mo.App. E.D.2010). The trial court is allowed to treble these damages if it finds the violation to be willing or knowing. *Id.* Congress designed the statutory remedy to provide "adequate incentive for an individual plaintiff to bring suit on his own behalf." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D.Pa.1995). The statutory damages "serve to liquidate uncertain actual damages and to encourage victims to bring suit to redress violations." *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 300 F.Supp.2d 888, 893 (E.D.Mo.2004). Because the actual losses associated with individual violations of the TCPA may be small, the added incentive of statutory damages is necessary. *Universal Underwriters*, 401 F.3d at 881.

American Family and the majority acknowledge that in seeking the fixed statutory damages, rather than actual damages, plaintiff acted consistently with the TCPA. They tacitly admit that coverage would exist for plaintiff's loss if only plaintiff had sought actual damages. But, the majority reaches the novel conclusion that the fixed statutory damages are penal in nature, and thus no coverage exists here, for the same loss that would be covered if plaintiff had sought actual damages. The fixed statutory amount of damages serves more than purely punitive or deterrent goals; the fixed award is a liquidated sum for actual harm and/or an incentive for aggrieved parties to act as private attorneys general. *Universal Underwriters*, 401 F.3d at 881. Also, that Congress elected to make treble damages available—separate from fixed damages—strongly suggests that the fixed

statutory damages serve additional goals other than deterrence and punishment. *Universal Underwriters*, 401 F.3d at 881. Moreover, interpreting the TCPA's fixed statutory remedy as penal in nature is counter to the clear admonition of Missouri law to interpret insurance contracts liberally in favor of the insured, to furnish, rather than to exclude, coverage. *Lou Fusz*, 300 F.Supp.2d at 894.

The TCPA is a remedial statute intended to address misdeeds suffered by individuals. *See Terra Nova*, 869 N.E.2d at 575 (holding TCPA is remedial statute, and that statutory damages are not punitive damages); *see also Prime TV*, 223 F.Supp.2d at 750 (holding unsolicited fax advertisements constituted "property damage" under policy with language similar to the policy here); *USA Tax Law Center, Inc. v. Office Warehouse Wholesale, LLC*, 160 P.3d 428, 434 (Colo.App.2007)(noting TCPA is a remedial statute).

Finding no error, I would affirm the award of property damages.