John OLSEN, et al., Respondents,

v.

Javed Q. SIDDIQI and Global
Bizdimensions, L.L.C.,
Defendants,

and

American Family Mutual Insurance
Company, Appellant.

No. ED 103641

Missouri Court of Appeals,
Eastern District,
**DIVISION ONE**.

Filed: March 14, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied April
27, 2017

Application for Transfer Denied
June 27, 2017

Robert J. Wulff, Benjamin M. Fletcher, St. Louis, MO, Susan Ford Robertson, J. Zachary Bickel, Kansas City, MO, for Appellant.

Max G. Margulis, Chesterfield, MO, Alan S. Mandel, Michael J. Sudekum, St. Louis, MO, for Respondents.

ROBERT M. CLAYTON III, Presiding Judge

American Family Mutual Insurance Company ("American Family") appeals the grant of summary judgment in favor of John Olsen, individually and on behalf of the other members of a certified class as assignees (collectively "Plaintiffs"). The trial court's grant of summary judgment awarded Plaintiffs a total amount of $6,439,644.54 on their third garnishment action against American Family, the general commercial liability insurer for defendant Global Bizdimensions, L.L.C. ("Global"). In the underlying garnishment action at issue in this appeal, Plaintiffs sought to satisfy damages and post-judgment interest awarded to them in a May 2009 underlying judgment approving a settlement agreement between Plaintiffs and defendants Global and Javed Q. Siddiqi (collectively "Defendants") out of insurance proceeds from American Family's insurance policies issued to Global. We affirm.

**I. BACKGROUND**

**A. The Procedural History**

This case has a lengthy and complex procedural history. The history includes: an original and amended class-action petition filed by Plaintiffs against Defendants; a tender of defense of the matter to American Family; American Family's subsequent denial of insurance coverage; a settlement agreement entered into by Plaintiffs and Defendants that was approved by the trial court; three separate garnishment actions filed by Plaintiffs against American Family; multiple orders and judgments entered by the trial court; two prior direct appeals to this Court filed by American Family; and a Missouri Supreme Court decision abrogating one of our Court's prior opinions in this case.

**1. Plaintiffs' Petitions Against Defendants, Defendants' Involvement of Global's Insurer American Family, Relevant Language of the Insurance Policies, and American Family's Denial of Insurance Coverage**

In January 2008, Plaintiffs filed an original class-action petition against Siddiqi, an individual doing business as Quizno's Subs and managing member of Global, alleging Siddiqi sent unsolicited advertising faxes to Plaintiffs in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. section 227 et seq.[1] Plaintiffs sought an injunction prohibiting Siddiqi from engaging in further violations of the TCPA and an award of $500.00 in damages for each violation of the TCPA.[2]

---

1. *See Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 261 (Mo. banc 2013) ("*HIAR*") (referring to "47 U.S.C. section 227 et seq." as "the Telephone Consumer Protection Act (TCPA)"). All references to 47 U.S.C. section 227 et seq. in this opinion are the versions effective December 16, 2003 to July

8, 2005 and July 9, 2005 to December 21, 2010, because the May 2009 underlying judgment found Defendants sent Plaintiffs unsolicited advertising faxes between March 14, 2004 and March 6, 2007.

2. *See* 47 U.S.C. section 227(b)(3)(A)-(C) (authorizing relief in the form of an injunction

Shortly after the lawsuit was filed, Siddiqi tendered defense of the matter to American Family pursuant to insurance policies issued to Global. By letter dated June 11, 2008, American Family acknowledged receipt of Siddiqi's tender of defense, and American Family admitted it afforded certain general commercial liability coverage to Global.

American Family issued three insurance policies to Global, affording coverage for policy periods from: March 6, 2004 through March 6, 2005; March 6, 2005 through March 6, 2006; and March 6, 2006 through March 6, 2007. The aggregate policy limits for each policy period were $2,000,000.00. Each policy insured against "those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' ... to which this insurance applies ...." In addition, the provisions of the policy relating to "property damage" included an explanation that it is caused by an "occurrence," which means "an accident." Finally, the policies afforded coverage "[i]n addition to the [l]imit of [i]nsurance ..." for "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before [American Family] ha[s] paid, offered to pay, or deposited in court the part of the judgment that is within [its] [l]imit of [i]nsurance ...."

In its June 11, 2008 letter, American Family, (1) stated it would be unable to defend Defendants for any claims in the Plaintiffs' original petition; and (2) denied insurance coverage for the claims based upon language in the insurance policies. In August 2008, Plaintiffs amended their original petition, adding Global, a Missouri entity, as a defendant.

**2. The Settlement Agreement Entered into Between Plaintiffs and Defendants and the Resulting May 2009 Underlying Judgment**

Subsequently, Plaintiffs and Defendants entered into a settlement agreement for $4,917,500.00 in damages, executable only against American Family. The settlement agreement provided that, *inter alia*, Defendants sent Plaintiffs a total of 9,835 unsolicited advertising faxes between March 14, 2004 and March 6, 2007. On May 26, 2009, the trial court entered a judgment approving Plaintiffs' and Defendants' settlement agreement and approving class certification ("Underlying Judgment" or "May 2009 Underlying Judgment"). In the Underlying Judgment, the trial court found the terms of the settlement agreement were fair, reasonable, and adequate and that the settlement amount was reasonable. The trial court also directed the parties to consummate the settlement agreement in accordance with its terms. Finally, the Underlying Judgment was entered in favor of Plaintiffs and against Global in the total amount of $4,917,500.00, a figure representing $500.00 in damages for each of the total 9,835 unsolicited advertising faxes sent by Global between March 14, 2004 and March 6, 2007.[3] As indicated below, the Underlying Judgment remained unsatisfied as of the time the third garnishment at issue in this appeal was filed.

**3. The Procedural History Relating to Plaintiffs' First and Second Garnishment Actions Filed Against American Family Including the Resulting August**

and $500.00 in damages for each violation of the TCPA); *see also HIAR*, 411 S.W.3d at 261, 261 n.2, 262 (indicating such relief is authorized under 47 U.S.C. section 227(b)(3)(A)-(C)).

**3.** The Underlying Judgment found all of Plaintiffs' claims against Siddiqi were dismissed with prejudice by agreement of the parties.

**2011 and August 2012 Judgments and This Court's Opinion in *Olsen I***

On July 15, 2009, Plaintiffs filed a traditional garnishment action against American Family, numbered 09–GARN–50750, seeking to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global ("First Garnishment"). Plaintiffs subsequently filed a motion to dismiss their First Garnishment action without prejudice, and the trial court entered an order granting the motion.

On December 8, 2010, Plaintiffs filed a second traditional garnishment action against American Family, numbered 10–GARN–89109, again seeking to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global ("Second Garnishment"). American Family filed a motion for summary judgment on their Second Garnishment action, which the trial court denied. On August 24, 2011, the trial court entered a judgment against American Family on Plaintiffs' Second Garnishment action, directing American Family to satisfy the Underlying Judgment in the amount of $4,917,500.00 in damages plus post-judgment interest ("August 2011 Judgment").

American Family appealed the denial of its motion for summary judgment and the August 2011 Judgment to this Court, arguing its general commercial liability insurance policies issued to Global did not cover the statutory TCPA damages awarded in the Underlying Judgment. A 2–1 majority of our Court agreed with American Family, concluding the statutory TCPA damages awarded in the Underlying Judgment did not constitute "property damage" under the terms of American Family's insurance policies issued to Global because statutory TCPA damages of $500.00 for each violation of the TCPA are penal in nature. *Olsen v. Siddiqi*, 371 S.W.3d 93, 95–100 (Mo. App. E.D. 2012) ("*Olsen I*"). Accordingly, the Court in *Olsen I* reversed the trial court's denial of American Family's motion for summary judgment and the court's August 2011 Judgment against American Family, and the Court remanded the cause with directions for the trial court to enter summary judgment in favor of American Family. *Id.* at 98. After *Olsen I* was mandated, the trial court entered summary judgment in favor of American Family on Plaintiffs' Second Garnishment action ("August 2012 Judgment").

**4. The Procedural History Relating to Plaintiffs' Third Garnishment Action Filed Against American Family Including the Missouri Supreme Court's Decision in *HIAR* Abrogating *Olsen I* and This Court's Decision in *Olsen II***

After the trial court entered the August 2012 Judgment, the Missouri Supreme Court handed down *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258 (Mo. banc 2013) ("*HIAR*") on August 13, 2013. *HIAR*, like the procedural history in this case, involved circumstances where: an insurer declined to defend an unsolicited fax class action claiming TCPA violations; the class and the insured settled the claims for an assignment of right to collect from the insurer; and the trial court ruled the settlement was fair and reasonable. *Id.* at 261–62. Additionally, the insurance policy at issue in *HIAR* had identical "property damage" coverage as American Family's commercial liability policies insuring Global. *Compare id.* at 265–66, *with* language of American Family's insurance pol-

icies set out above in Section I.A.1.[4] The Missouri Supreme Court affirmed the trial court's decision finding the class' claims were covered under the insurance policy and ordering the insurer to pay the judgment plus interest thereon, concluding the insurance policy's coverage for "property damage" applied to statutory TCPA damages. *HIAR*, 411 S.W.3d at 261, 263, 265–69. The Missouri Supreme Court specifically determined statutory TCPA damages of $500.00 for each violation of the TCPA are not penal in nature; instead, the Court found such damages are considered remedial in nature and stated, "[t]o the extent that *Olsen [I]* declared otherwise, it no longer should be followed on this issue." *HIAR*, 411 S.W.3d at 265–68. In other words, the Missouri Supreme Court explicitly abrogated *Olsen I. See id.* at 268.[5]

On August 18, 2014, Plaintiffs filed a third traditional garnishment action against American Family, numbered 14–GARN–59892, once again seeking to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global ("Third Garnishment").

Thereafter, on September 2, 2014, Plaintiffs filed a motion for relief from the August 2012 Judgment pursuant to Rule 74.06(b)(5),[6] requesting the trial court to reopen the Second Garnishment action. American Family then filed a motion to quash the Third Garnishment action. In an October 20, 2014 order, the trial court denied Plaintiffs' motion for relief with respect to their Second Garnishment action and denied American Family's motion to quash the Third Garnishment action ("October 2014 Order").

American Family then filed a petition for writ of prohibition to this Court, challenging the trial court's October 2014 Order denying American Family's motion to quash the Third Garnishment action. After our Court denied American Family's petition, American Family filed a motion in the trial court requesting it to denominate the October 2014 Order as a "judgment." The trial court granted American Family's motion, and American Family then filed a notice of appeal in this Court, appealing the "judgment" denying its motion to quash the Third Garnishment action.

On June 9, 2015, our Court issued a decision dismissing American Family's appeal as premature, finding the trial court's "judgment" denying its motion to quash the Third Garnishment action was not a final judgment from which an appeal would lie. *Olsen v. Global Biz Dimensions, LLC*, 462 S.W.3d 886, 888–91 (Mo. App. E.D. 2015) ("*Olsen II*"). We found the trial court had not entered a judgment determining the controverted issue of whether garnishment was appropriate in light of the Missouri Supreme Court's decision in *HIAR*, there was no evidence in the record that any money or bond had been deposited with the trial court, and the name "judgment" alone did not accomplish finality. *Id.* at 889–90. Our Court further found "the possibility remains that the trial court, after considering the interrogatory responses and exceptions, could enter judgment in either party's favor under Rule 90," and the appellate court "must give the trial court the opportunity to do so." *Id.* at 891.

---

4. *See also Olsen v. Global Biz Dimensions, LLC*, 462 S.W.3d 886, 888 (Mo. App. E.D. 2015) ("*Olsen II*") (finding the policy language in *HIAR* and *Olsen I* was "identical").

5. *See also Olsen II*, 462 S.W.3d at 888 (finding *HIAR* "explicitly abrogate[ed] *Olsen I*").

6. All references to Rules are to Missouri Supreme Court Rules (2016).

## B. The Procedural Posture Immediately Preceding the Instant Appeal, Including the October 2015 Judgment American Family is Appealing in This Case

After our Court's decision in *Olsen II*, American Family and Plaintiffs each filed motions for summary judgment in the trial court with respect to Plaintiffs' Third Garnishment action. In its motion filed on July 10, 2015, American Family argued it was entitled to summary judgment on Plaintiffs' Third Garnishment action because our Court had concluded in *Olsen I* that there was no coverage under American Family's insurance policies issued to Global, and Plaintiffs were barred from relitigating the issue under the doctrines of collateral estoppel and res judicata despite the Missouri Supreme Court's subsequent decision in *HIAR*.

Plaintiffs' motion for summary judgment filed on July 22, 2015 argued they were entitled to summary judgment on their Third Garnishment action because, (1) the May 2009 Underlying Judgment remained completely unsatisfied; (2) since *Olsen I* and the resulting August 2012 Judgment that entered summary judgment in favor of American Family on Plaintiffs' Second Garnishment action, the Missouri Supreme Court issued *HIAR*, a decision that changed the law on the issue of whether there was insurance coverage pursuant to the language in American Family's insurance policies issued to Global; and (3) the doctrines of collateral estoppel and res judicata do not apply to successive traditional garnishment actions, particularly where there is an intervening change in the law. Plaintiffs requested $4,917,500.00 in damages plus post-judgment interest, which was the amount agreed upon by Plaintiffs and Defendants in the May 2009 Underlying Judgment.

American Family's response to Plaintiffs' motion for summary judgment alleged their "ultimate exposure" of damages was $3,629,000.00. American Family alleged that amount of damages was "based upon the aggregate [policy] limits of $2,000,000.00 for March 2006 through March 2007; actual damages of $1,147,000.00 for March 2005 through March 2006; and actual damages of $482,000.00 for the March 2004 through March 2005 period."

On October 1, 2015, the trial court entered a judgment denying American Family's motion for summary judgment and granting Plaintiffs' motion for summary judgment on their Third Garnishment action in all respects except for Plaintiffs' requested amount of damages ("October 2015 Judgment"). The October 2015 Judgment explicitly stated:

> The [c]ourt finds that there is a change in the law that leads to an inequitable operation of law during the time period of the garnishments filed in connection with this case. The nature of a garnishment is to collect a non-paid [j]udgment. Res judicata does not apply to the continuing nature of this cause of [action].

The October 2015 Judgment also implicitly found the doctrine of collateral estoppel does not apply to the Third Garnishment action. Furthermore, the trial court determined the underlying damages implicated the three American Family insurance policies issued to Global and awarded damages in favor of Plaintiffs and against American Family in the total amount of $6,439,-644.54 [7] on Plaintiffs' Third Garnishment

---

7. The trial court found the total judgment amount was $6,439,644.54 based upon "the amount of damages within policy limits herein of $3,269,000.00, plus the accrued post-judgment interest on the full [U]nderlying [J]udgment through September 30, 2015, in

action against American Family. American Family now appeals the October 2015 Judgment.

## II. DISCUSSION

American Family raises three points on appeal, arguing the trial court's October 2015 Judgment granting summary judgment in favor Plaintiffs on their Third Garnishment action was erroneous. In its first point, American Family asserts the trial court erred in granting summary judgment to Plaintiffs because they were not entitled to Rule 74.06(b)(5) relief setting aside the trial court's August 2012 Judgment in favor of American Family on Plaintiffs' Second Garnishment action. In its second and third points, American Family contends, respectively, that the trial court erred in granting summary judgment to Plaintiffs because the doctrines of collateral estoppel and res judicata preclude Plaintiffs from obtaining relief on their Third Garnishment action.

As an initial note, American Family's first point on appeal raises an issue—Rule 74.06(b)(5) relief allegedly given to Plaintiffs on their Second Garnishment action—that is not properly before this Court for our review. It is true that on September 2, 2014, Plaintiffs filed a motion for relief from the August 2012 Judgment pursuant to Rule 74.06(b)(5),[8] requesting the trial

court to reopen the Second Garnishment action. However, in its October 2014 Order, the trial court denied Plaintiffs' motion for relief pursuant to Rule 74.06(b)(5) that pertained to the Second Garnishment action; accordingly, American Family was not aggrieved by Plaintiffs' motion for relief, and Plaintiffs were not given relief pursuant to the Rule 74.06(b)(5).

Moreover, Plaintiffs' motion for summary judgment on their Third Garnishment action, filed on July 22, 2015, did not seek relief under Rule 74.06(b)(5). Instead, Plaintiffs' motion argued they were entitled to summary judgment on their Third Garnishment action because, (1) the May 2009 Underlying Judgment remained completely unsatisfied; (2) since *Olsen I* and the resulting August 2012 Judgment that entered summary judgment in favor of American Family on Plaintiffs' Second Garnishment action, the Missouri Supreme Court issued *HIAR*, a decision that changed the law on the issue of whether there was insurance coverage pursuant to the language in American Family's insurance policies issued to Global; and (3) the doctrines of collateral estoppel and res judicata do not apply to successive traditional garnishment actions, particularly where there is an intervening change in the law.

Accordingly, American Family's first point on appeal raises an issue—Rule

the amount of $2,810,644.54." (emphasis added). Although not raised by either party on appeal, $3,269,000.00 plus $2,810,644.54 does not equal $6,439,644.54; however, $3,629,000.00 plus $2,810,644.54 does equal $6,439,644.54. Because American Family's response to Plaintiffs' motion for summary judgment alleged its "ultimate exposure" of damages was $3,629,000.00, and because the parties do not dispute that if American Family is found liable the total judgment amount should be $6,439,644.54, it appears the trial court's statement that the amount of damages was $3,269,000.00 was a typographical error which transposed two numbers. Based on the foregoing, this opinion's ultimate holding that

the trial court's October 2015 judgment is affirmed only affirms the undisputed total judgment amount of $6,439,644.54.

8.  Rule 74.06(b) provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force."

74.06(b)(5) relief allegedly given to Plaintiffs—that was not a basis asserted by Plaintiffs in support of its motion for summary judgment and that was not an issue ruled on by the trial court in its grant of summary judgment to Plaintiffs. Therefore, the issue is not properly before us for review, we need not address it, and American Family's first point on appeal is denied. *See Metropolitan National Bank v. Commonwealth Land Title Insurance Company*, 456 S.W.3d 61, 65 n.3 (Mo. App. S.D. 2015) and *Inman v. Dominguez*, 371 S.W.3d 921, 926 (Mo. App. S.D. 2012) (similarly finding).

However, American Family's second and third points on appeal do raise issues that were bases asserted by Plaintiffs in support of their motion for summary judgment; specifically, they present the issues of whether the doctrines of collateral estoppel or res judicata preclude Plaintiffs from obtaining relief on their Third Garnishment action. Accordingly, we will review the merits of those points after setting forth our standard of review and the nature of the Third Garnishment action.

## A. The Standard of Review and the Nature of Plaintiffs' Third Garnishment Action

Summary judgment is reviewed essentially de novo and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). An appellate court reviews the record in the light most favorable to the party against whom summary judgment was entered. *Id.*

In this case, Plaintiffs' Third Garnishment action, like their First Garnishment and Second Garnishment actions, was a traditional garnishment authorized under section 525.240 RSMo Supp. 2001 and Rule 90.[9] *See Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. banc 2002). A traditional garnishment action is considered "an incidental remedy by which a judgment creditor may collect a judgment by reaching the judgment debtor's property in the hands of a third party." *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 112 (Mo. App. W.D. 2012) (quotations omitted). In other words, a traditional garnishment action aids in the enforcement or execution of an underlying judgment. *McGathey v. Matthew K. Davis Trust*, 457 S.W.3d 867, 873 (Mo. App. W.D. 2015). Here, Plaintiffs' Third Garnishment action seeks to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global. *See Johnston*, 68 S.W.3d at 403–04 (providing a traditional garnishment allows judgment creditors such as Plaintiffs to garnish an insurer's insurance policy after a judgment is entered against a defendant who may have had insurance coverage).

In order to be entitled to recover against American Family pursuant to their Third Garnishment action, Plaintiffs must establish that, (1) they hold a valid judgment against Global, the defendant-insured; (2) the Underlying Judgment is for a risk insured by American Family's insurance policies issued to Global; and (3) American Family is obligated to pay the Underlying Judgment pursuant to the terms of the insurance policies. *See 30 Mo.*

---

9. There are two avenues for judgment creditors such as Plaintiffs to collect money from an insurance company: "(1) a traditional garnishment under section 525.240 [RSMo Supp. 2001] and Rule 90 or (2) a direct action against the insurer authorized by section 379.200 [RSMo 2000]." *Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. banc 2002).

Practice Series section 5:32 (2d ed. 2016). In this appeal, American Family claims Plaintiffs were not entitled to summary judgment on their Third Garnishment action because the affirmative defenses of collateral estoppel and res judicata preclude Plaintiffs from obtaining relief. *See Roy v. MBW Construction, Inc.*, 489 S.W.3d 299, 302 (Mo. App. W.D. 2016) and *Lambert v. Warner*, 379 S.W.3d 849, 854 (Mo. App. E.D. 2012) (finding collateral estoppel and res judicata are affirmative defenses). By raising those affirmative defenses, American Family is essentially contending Plaintiffs have failed to demonstrate they are entitled to judgment of law on the third element of a traditional garnishment action (that the insurer American Family is obligated to pay the Underlying Judgment pursuant to the terms of its insurance policies issued to Global). *See* 30 Mo. Practice Series section 5:32 (2d ed. 2016). Because the affirmative defenses of collateral estoppel and res judicata have been properly raised by American Family and attempt to negate an element of Plaintiffs' action, Plaintiffs must demonstrate the affirmative defenses fail as a matter of law in order to be entitled to summary judgment. *See Roy*, 489 S.W.3d at 302; *Lambert*, 379 S.W.3d at 854; *Carroll v. Missouri Intergovernmental Risk Management Ass'n*, 181 S.W.3d 123, 126 (Mo. App. W.D. 2005).

## B. Whether the Doctrine of Collateral Estoppel Precludes Plaintiffs From Obtaining Relief on their Third Garnishment Action

■ In its second point on appeal, American Family maintains the trial court erred in granting summary judgment to Plaintiffs because the doctrine of collateral estoppel precludes Plaintiffs from obtaining relief on their Third Garnishment action. Plaintiffs' Third Garnishment action, like their First and Second Garnishment actions, sought to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global. American Family specifically argues collateral estoppel applies to the Third Garnishment because the issue in that action—whether its insurance policies issued to Global provided coverage for the statutory TCPA damages awarded in the May 2009 Underlying Judgment—was conclusively determined by, (1) this Court's decision in *Olsen I*, where a majority of our Court found American Family's insurance policies issued to Global did not cover the statutory TCPA damages awarded in the May 2009 Underlying Judgment; and (2) the trial court's August 2012 Judgment entering summary judgment in favor of American Family on Plaintiffs' Second Garnishment action in accordance with this Court's directions in *Olsen I*.

In response to American Family's argument, Plaintiffs assert the doctrine of collateral estoppel does not apply to their Third Garnishment action, because the Missouri Supreme Court's decision in *HIAR*, which was handed down after *Olsen I* and the trial court's August 2012 judgment but before the Third Garnishment action was filed and ruled upon, constituted an intervening change in the law. For the reasons discussed below, we agree with Plaintiffs.

## 1. The Doctrine of Collateral Estoppel and the "Change in the Law" Exception

■ In general, the doctrine of collateral estoppel, also known as issue preclusion, prevents a party or those in privity with the party from re-litigating an issue that was necessarily and unambiguously decided in a previous case and final judg-

ment.[10] *Hollida v. Hollida*, 190 S.W.3d 550, 554 (Mo. App. S.D. 2006). The purpose of collateral estoppel is to prevent multiple lawsuits over a matter that has already been decided and that has remained substantially the same, both factually and legally. *C.I.R. v. Sunnen*, 333 U.S. 591, 599, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The doctrine is not meant to create vested rights in a decision that has become obsolete, erroneous, or abrogated with time, thereby causing inequities among plaintiffs. *Id.*; *see Ginters v. Frazier*, 614 F.3d 822, 826–27 (8th Cir. 2010); *see also Xiaoyan Gu v. Da Hua Hu,* 447 S.W.3d 680, 686 (Mo. App. E.D. 2014) ("[c]ollateral estoppel does not apply where its application would be inequitable"). Accordingly, "[c]ollateral estoppel extends only to contexts in which the controlling facts and applicable legal rules remain unchanged." *Ginters*, 614 F.3d at 826–27 (quoting *Montana v. U.S.*, 440 U.S. 147, 158, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); *see also Sunnen*, 333 U.S. at 599–600, 68 S.Ct. 715; *ASARCO, Inc. v. McNeill*, 750 S.W.2d 122, 128–29 (Mo. App. S.D. 1988).

■ Furthermore, where a situation is vitally altered between the time of the first judgment and the second judgment, such as when a judicial declaration intervening between the two proceedings substantially changes the applicable legal rules, the prior determination is not conclusive and the doctrine of collateral estoppel is inapplicable. *Sunnen*, 333 U.S. at 599–600, 68 S.Ct. 715; *ASARCO, Inc.*, 750 S.W.2d at 129. This principle has been referred to as the "change in the law" exception to the doc-

trine of collateral estoppel. *See Ginters*, 614 F.3d at 826–27; *see also Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 828–29, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002).

Our Court's decision in *Fielder v. Fielder*, 671 S.W.2d 408 (Mo. App. E.D. 1984) is instructive on the change in the law exception. In *Fielder*, two trial judges ruled differently on the appellant's two motions to quash a writ of execution and garnishment to collect child support payments in a divorce case; in July 1982, Judge Koehr granted a motion to quash filed by appellant, while in April 1983, Judge Ryan denied a motion to quash filed by the appellant. *Id.* at 409. The appellant appealed, and a question before this Court was whether a conclusion of law made in Judge Koehr's decision precluded Judge Ryan from later determining the issue of law differently under the doctrine of collateral estoppel. *Id.* at 411. In our Court's decision, we approvingly quoted the Restatement (Second) of Judgments section 28 (1982):

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, re-litigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: ... (2) The issue is one of law and ... a new determination is warranted in order to take account of an intervening change in the [applicable] legal context or otherwise to avoid inequitable administration of the laws ...."

10.  In determining whether to apply the doctrine of collateral estoppel, courts often consider whether:
(1) the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estop-

pel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.
*Xiaoyan Gu v. Da Hua Hu*, 447 S.W.3d 680, 686 (Mo. App. E.D. 2014).

*Fielder*, 671 S.W.2d at 411. This Court held the preceding language in the Restatement would allow the respondent to avoid the collateral estoppel effect of Judge Koehr's decision if she could show there had been an intervening change of law between Judge Koehr's and Judge Ryan's decisions. *Id.* However, because no such intervening change of law occurred in that case, our Court found the respondent was precluded from re-litigating the conclusion of law in Judge Koehr's decision pursuant to the doctrine of collateral estoppel, and therefore, we reversed Judge Ryan's decision determining the legal issue differently. *Id.* at 411–12.

**2. Analysis and American Family's Attempt to Distinguish *Fielder***

In this case, the relevant procedural posture is as follows. Plaintiffs filed their Second Garnishment action against American Family, seeking to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global. After the trial court entered its August 2011 Judgment in favor of Plaintiffs on their Second Garnishment action, a majority of our Court in *Olsen I* found American Family's insurance policies issued to Global did not cover the statutory TCPA damages awarded in the May 2009 Underlying Judgment because statutory TCPA damages of $500.00 for each violation of the TCPA are penal in nature. 371 S.W.3d at 95–100. The trial court then entered its August 2012 Judgment entering summary judgment in favor of American Family on Plaintiffs' Second Garnishment action in accordance with this Court's directions in *Olsen I. See id.* at 98.

Thereafter, the Missouri Supreme Court handed down *HIAR* on August 13, 2013, considering language of an insurance policy that had identical coverage to those at issue in this case. *Compare* 411 S.W.3d at 265–66, *with* language of American Family's insurance policies set out above in Section I.A.1; *see also Olsen II*, ·462 S.W.3d at 888. The Missouri Supreme Court specifically determined statutory TCPA damages of $500.00 for each violation of the TCPA are not penal in nature; instead, the Court found such damages are considered remedial in nature and stated, "[t]o the extent that *Olsen* [*I*] declared otherwise, it no longer should be followed on this issue." *HIAR*, 411 S.W.3d at 265–68. In other words, the Missouri Supreme Court explicitly abrogated *Olsen I. See id.* at 268; *see also Olsen II*, 462 S.W.3d at 888. Subsequently, on August 18, 2014, Plaintiffs filed their Third Garnishment action against American Family, once again seeking to satisfy the damages and post-judgment interest awarded to them in the May 2009 Underlying Judgment out of insurance proceeds from American Family's insurance policies issued to Global. The trial court granted summary judgment in favor of Plaintiffs on their Third Garnishment action in its October 2015 Judgment.

Plaintiffs' Second and Third Garnishment actions in this case both involve a matter that had remained substantially the same factually because, *inter alia*, the May 2009 Underlying Judgment remained unsatisfied at the time the actions were filed, and both actions sought damages and post-judgment interest awarded to them in the Underlying Judgment out of proceeds from the same insurance policies issued by American Family to Global. However, by virtue of the Missouri Supreme Court's *HIAR* decision that abrogated *Olsen I* on the issue of whether the language in American Family's insurance policies issued to Global afforded coverage for the statutory TCPA damages awarded in the May 2009 Underlying Judgment, Plaintiffs' Second and Third Garnishment actions did

not involve a matter that had remained substantially the same legally. *See Sunnen*, 333 U.S. at 599, 68 S.Ct. 715; *Ginters*, 614 F.3d at 826–27. *HIAR*, a judicial declaration that intervened between Plaintiffs' Second and Third Garnishment actions, substantially changed and vitally altered the applicable legal rules stated in *Olsen I* and followed by the trial court in its August 2012 Judgment. Accordingly, prior determinations of the law, which were made in *Olsen I* and the trial court's August 2012 Judgment, were not conclusive on the issue of whether American Family was obligated to pay the Underlying Judgment pursuant to the terms of its insurance policies issued to Global and the doctrine of collateral estoppel is inapplicable. *See Sunnen*, 333 U.S. at 599–600, 68 S.Ct. 715; *ASARCO, Inc.*, 750 S.W.2d at 129; *see also Ginters*, 614 F.3d at 827 (abrogation of a prior judicial determination "constitutes a significant change in controlling legal principles under the 'change in [the] law' exception to the doctrine of collateral estoppel").

In other words, after *HIAR* abrogated *Olsen I* on an issue of law and Plaintiffs filed their Third Garnishment action, which was a new traditional garnishment action attempting to collect on the unsatisfied Underlying Judgment, a new determination on whether American Family was obligated to pay the Underlying Judgment pursuant to the terms of the insurance policies was warranted "in order to take account of [the] intervening change in the [applicable] legal context or otherwise to avoid inequitable administration of the laws." *Fielder*, 671 S.W.2d at 411 (quoting Restatement (Second) of Judgments section 28(2) (1982)); *see also McGathey*, 457 S.W.3d at 873; *Cain*, 383 S.W.3d at 112. Because Plaintiffs have shown there had been an intervening change in the law between the Second and Third Garnishment actions, collateral estoppel does not apply to court determinations made with respect to the Second Garnishment. *Fielder*, 671 S.W.2d at 411.

Although American Family acknowledges "there is an exception to the application of collateral estoppel due to an intervening change in the law," it attempts to distinguish *Fielder* on the basis that the proceedings in *Fielder*—divorce proceedings—remained ongoing.[11] *See generally id.* at 409–12. We find *Fielder* is not distinguishable on that basis, because the proceedings in this case remained ongoing as well, in that the May 2009 Underlying Judgment remained unsatisfied. Plaintiffs' Third Garnishment action, like their First and Second Garnishment actions, was merely an "incidental remedy" by which

---

11. American Family also attempts to argue summary judgment in favor of Plaintiffs was improper pursuant to case law finding that, *inter alia*, whether a prior judgment is legally correct is not at issue in applying collateral estoppel. *See Buckley v. Buckley*, 889 S.W.2d 175, 179 (Mo. App. E.D. 1994); *Reynolds v. Tinsley*, 612 S.W.2d 828, 830 (Mo. App. E.D. 1981); *Ideker v. PPG Industries, Inc.*, 788 F.3d 849, 854 (8th Cir. 2015); *see also N.W. Elec. Power Co-op., Inc. v. American Motorists Ins. Co.*, 451 S.W.2d 356, 365 (Mo. App. 1969). However, in the cases relied upon by Plaintiffs, neither party on appeal advanced an argument that the change in the law exception to the doctrine of collateral estoppel applied or the case did not involve an actual change in the law. *See Buckley*, 889 S.W.2d at 179 (neither party advanced argument); *Reynolds*, 612 S.W.2d at 830 (neither party advanced argument and no actual change in the law); *Ideker*, 788 F.3d at 853–54 (no actual change in the law); *N.W. Elec. Power Co-op., Inc.*, 451 S.W.2d at 365 (neither party advanced argument and no actual change in the law). Accordingly, the aforementioned cases are distinguishable from the circumstances here, and therefore, American Family's reliance on them is misplaced. *See Xiaoyan Gu*, 447 S.W.3d at 686 (whether collateral estoppel applies is determined by the facts of each case).

Plaintiffs as judgment creditors were attempting to collect the damages and post-judgment interest awarded in the Underlying Judgment that were in the hands of American Family by virtue of the insurance policies issued to Global. *See Cain,* 383 S.W.3d at 112; *see also McGathey,* 457 S.W.3d at 873.

Furthermore, we find that to not allow Plaintiffs to recover on their Third Garnishment action when the May 2009 Judgment remained unsatisfied and when *Olsen I* was abrogated would be inequitable. *See Sunnen,* 333 U.S. at 599, 68 S.Ct. 715 and *Ginters,* 614 F.3d at 826–27 (collectively providing the doctrine of collateral estoppel is not meant to create vested rights in a decision that has become abrogated, thereby causing inequities among plaintiffs). Therefore, under the circumstances of this case, the doctrine of collateral estoppel does not preclude. Plaintiffs from obtaining relief on their Third Garnishment action, and Plaintiffs have demonstrated the doctrine fails as a matter of law. *See Xiaoyan Gu,* 447 S.W.3d at 686 ("[c]ollateral estoppel does not apply where its application would be inequitable," which is a determination to be made based on the facts of each case); *see also Carroll,* 181 S.W.3d at 126. Point two is denied.

## C. Whether the Doctrine of Res Judicata Precludes Plaintiffs From Obtaining Relief on their Third Garnishment Action

In its third and final point on appeal, American Family asserts the trial court erred in granting summary judgment to Plaintiffs because the doctrine of res judicata precludes Plaintiffs from obtaining relief on their Third Garnishment action. Similar to its arguments with respect to the doctrine of collateral estoppel, American Family argues res judicata applies to the Third Garnishment because the issue in that action—whether its insurance policies issued to Global provided coverage for the statutory TCPA damages awarded in the May 2009 Underlying Judgment—was conclusively determined by, (1) this Court's decision in *Olsen I,* where a majority of our Court found American Family's insurance policies issued to Global did not cover the statutory TCPA damages awarded in the May 2009 Underlying Judgment; and (2) the trial court's August 2012 Judgment entering summary judgment in favor of American Family on Plaintiffs' Second Garnishment action in accordance with this Court's directions in *Olsen I.* For the reasons discussed below, we find American Family's arguments have no merit.

## 1. The Doctrine of Res Judicata and Relevant Case Law Examining the Doctrine in the Context of Garnishment Proceedings

The doctrine of res judicata, also known as claim preclusion, bars a plaintiff from reasserting a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them. *Dodson v. City of Wentzville,* 133 S.W.3d 528, 538 (Mo. App. E.D. 2004). Where the "four identities" are satisfied, the second action will be barred by res judicata. *Philips v. Citimortgage, Inc.,* 430 S.W.3d 324, 329 (Mo. App. E.D. 2014). "These are: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." *Id.* (quotations omitted). Res judicata applies not only to the specific issues ruled upon by the court and used to form the court's judgment, but also to issues that the parties could have brought in the previous litigation. *Id.* The purpose of the doctrine of res judicata "is

to protect individuals from the burden of litigating multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent decisions." *Xiaoyan Gu*, 447 S.W.3d at 687.

For purposes of this appeal only, we assume the first, third, and fourth "identities" set out above have been satisfied and focus on whether the second identity has been satisfied, i.e., whether the cause of action is the same in both the prior and subsequent action. *See Philips*, 430 S.W.3d at 329; *Xiaoyan Gu*, 447 S.W.3d at 689. We find two appellate cases are instructive in determining whether Plaintiffs' Second and Third Garnishment actions are the same and the second identity of res judicata has been satisfied in this case.

First, in *Whiteley v. Whiteley*, the appellant secured an underlying judgment against her former husband for support and maintenance. 325 S.W.2d 502, 502 (Mo. App. 1959). After the former husband failed to make payments, the appellant filed an initial garnishment action against respondent The Equitable Life Assurance Society ("Equitable"), attempting to collect the underlying judgment. *Id.* at 502–04. The trial court then granted Equitable's motion for judgment on the pleadings. *Id.* at 504. Subsequently, the appellant filed second and third garnishment actions against Equitable, and the trial court again entered a judgment in Equitable's favor. *Id.* at 502–05. The appellant appealed the trial court's judgment on the third garnishment action, and Equitable argued the most recent action was barred by the doctrine of res judicata. *Id.* In determining whether res judicata applied, the Kansas City Court of Appeals found "the obligation of [Equitable] on the annuity contract [issued to the former husband] . . .

remained the same during the time of the three garnishment proceedings and the judgments entered thereon." *Id.* at 503–04, 505. The Court held that because the issues in three garnishment proceedings were the same "without any change as to the rights of the respective parties," res judicata barred the third garnishment action. *Id.* at 505. However, the *Whiteley* Court noted, "[i]f the obligation of [Equitable] under its annuity contract . . . should change, then a different question would be presented." *Id.*

In *Fielder*, which was decided after *Whiteley*, our Court was presented with the issue of whether res judicata barred the appellant's second motion to quash a writ of execution and garnishment in a divorce proceeding where the appellant had filed an initial motion to quash a writ of execution and garnishment in the same proceeding. *Fielder*, 671 S.W.2d at 409–10. Our Court held that even though the parties to the two writs were the same and each motion to quash involved a writ of execution and garnishment based on the same divorce decree ordering periodic child support, res judicata did not bar the second garnishment proceeding. *Id.* at 410. We reasoned:

> For purposes of res judicata . . . a second attempt to execute on a judgment is not the same cause of action as the first attempt to obtain execution because the failure to obtain satisfaction of the judgment of the first writ of execution does not preclude subsequent attempts. A judgment plaintiff is not limited to an original execution, but may procure further writs to obtain satisfaction.

*Id.*[12]

### 2. Analysis

---

12. *See also Noble v. Noble*, 456 S.W.3d 120, 132 n.22 (Mo. App. W.D. 2015) ("Failure to obtain satisfaction of the judgment of the first

writ of execution does not preclude subsequent attempts. A judgment plaintiff is not limited to an original execution, but may pro-

While the holdings of *Whiteley* and *Fielder* appear to be in conflict, we need not decide the remedy for the apparent conflict here because, as applied to this case, the reasoning of both opinions yields the same result: res judicata does not bar Plaintiffs' Third Garnishment action because it is not the same cause of action as Plaintiffs' Second Garnishment action.

In *Whiteley*, "the obligation of [Equitable] on the annuity contract [issued to the former husband] ... remained the same during the time of the three garnishment proceedings and the judgments entered thereon." 325 S.W.2d at 503–04, 505. In contrast, in this case the obligation of American Family under its insurance policies issued to Global did not remain the same during the time of the Second and Third Garnishment proceedings because, as discussed above, *HIAR* explicitly abrogated *Olsen I* on the issue of whether there was coverage under the language of the insurance policies. *See HIAR*, 411 S.W.3d at 268; *see also Olsen II*, 462 S.W.3d at 888.

Accordingly, unlike the circumstances in *Whiteley*, the issue in the Second and Third Garnishment proceedings in this case—whether American Family had an obligation under its insurance policies is-

sued to Global—changed because of *HIAR*. *See Whiteley*, 325 S.W.2d at 505. Accordingly, the circumstances of this case are distinguishable from those in *Whiteley* by the *Whiteley* Court's own reasoning, and res judicata does not bar Plaintiffs' Third Garnishment action. *See id*. This conclusion is consistent with our Court's recent decision defining "the identity of the cause of action" "as the underlying facts *combined with the law*, giving a party a right to a remedy of one form or another based thereon." *Xiaoyan Gu*, 447 S.W.3d at 689–90 (emphasis added) (quotations omitted).[13]

Furthermore, res judicata does not bar Plaintiffs' Third Garnishment action under *Fielder*, which held "a second attempt to execute on a judgment is not the same cause of action as the first attempt to obtain execution because the failure to obtain satisfaction of the judgment of the first writ of execution does not preclude subsequent attempts." 671 S.W.2d at 410.

Based on the foregoing, Plaintiffs' Third and Second Garnishment actions are not the same cause of action pursuant to the reasoning of *Whiteley* and *Fielder*. Therefore, under the circumstances of this case, the doctrine of res judicata does not pre-

cure further writs to obtain satisfaction.") (quoting *Fielder*, 671 S.W.2d at 410).

**13.** Although not cited by either party on appeal, this Court's decision in *Xiaoyan Gu* held res judicata applied to bar a defendant-insurance company from asserting its policy exclusion defense in a second equitable garnishment action where the issue of the insured's coverage was determined in a prior equitable garnishment action. 447 S.W.3d at 683–85, 687–92. In determining whether the first and second garnishment suits were the same cause of action, our Court focused on the factual bases of the claims. *Id.* at 689–90. However, in *Xiaoyan Gu*, there was no assertion that whether the insurance company had an obligation under its insurance policies had

changed because of a Missouri Supreme Court decision abrogating an appellate court decision in the prior garnishment action. *See id.* Accordingly, the circumstances of *Xiaoyan Gu* are distinguishable from those in this case. Therefore, in this case, we find it is not necessary to focus on the factual basis of the claims in Plaintiffs' Second and Third Garnishment actions. Instead, we find applicable the *Xiaoyan Gu* Court's statement that our Court defines "the identity of the cause of action" "as the underlying facts *combined with the law*, giving a party a right to a remedy of one form or another based thereon." *Id.* (emphasis added) (quotations omitted).

clude Plaintiffs from obtaining relief on their Third Garnishment action, and Plaintiffs have demonstrated the doctrine fails as a matter of law. *See Philips*, 430 S.W.3d at 329; *see also Carroll*, 181 S.W.3d at 126.[14] Point three is denied.

Garnishment action against American Family is affirmed.

Mary K. Hoff, J., and Lisa P. Page, J., concur.

## III. CONCLUSION

The trial court's grant of summary judgment in favor of Plaintiffs on their Third

---

14. Finally, similar to its arguments with respect to the potential application of collateral estoppel, American Family attempts to argue in its final point that summary judgment in favor of Plaintiffs was improper pursuant to case law finding that whether a prior judgment is legally correct is not at issue in applying res judicata. *See Reynolds*, 612 S.W.2d at 830; *see also N.W. Elec. Power Co-op., Inc.*, 451 S.W.2d at 365. However, the cases relied upon by Plaintiffs did not involve circumstances where, as in this case, a Missouri Supreme Court decision abrogated an appellate court decision in a prior garnishment action. *See id.* Accordingly, the aforementioned cases are distinguishable from the circumstances here, and therefore, American Family's reliance on them is misplaced.